Filed 4/25/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MARY LYNNE BABBITT, | B263917 |
| Petitioner, | (Los Angeles County Super. Ct. No. BP158931) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LELIA CAROL McCORMACK, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate. David S. Cunningham, Judge. Petition granted.

Law Office of Jan Morrison and Jan Morrison for Petitioner.

No appearance for Respondent.

Cooper & Lewis and Kenneth D. Cooper for Real Party in Interest.

_____

## INTRODUCTION

In *In re Estate of Giraldin* (2012) 55 Cal.4th 1058 (*Giraldin*) the California Supreme Court held that when the settlor of a revocable trust appoints, during his lifetime, "'someone other than himself to act as trustee, once the settlor dies and the trust becomes irrevocable,'" the remainder beneficiaries "'have standing to sue the trustee for breaches of fiduciary duty committed during the period of revocability.'" (*Id.* at pp. 1065-1066, 1068.) This standing gives the beneficiaries the right to demand an accounting and information from the trustee regarding trust assets and transactions during the time period before the trust became irrevocable. (*Id.* at pp. 1069-1072.) But what if the settlor of a revocable trust does not appoint "someone other than himself to act as trustee," but instead appoints himself to be the trustee? We conclude that in this situation the rule is different. Although the beneficiaries of the irrevocable trust have standing to petition the probate court for an accounting and information after the settlor dies and the trust or a portion of the trust becomes irrevocable, the probate court does not have authority to order the trustee to provide an accounting or information regarding trust assets and transactions while the trust was still revocable, where, as here, there is no claim that the deceased settlor was incapacitated or subject to undue influence during the period of revocability.

## FACTUAL AND PROCEDURAL BACKGROUND

Mary Lynne Babbitt (Babbitt) and her husband Leland Babbitt (Leland) established the Leland C. Babbitt and Mary Lynne Babbitt Family Trust dated August 8, 1998, and they designated themselves co-trustees. The assets of the trust are the settlors' respective interests in their community property, including their residence in Los Angeles, another property located in Riverside County, and various bank and investment accounts, although Leland and Babbitt transferred only the Los Angeles property to the trust during Leland's lifetime.

2

When Leland died on May 5, 2014, the trust was divided into two subtrusts, Trust A, the survivor's trust, and Trust B, the decedent's trust. Both subtrusts distribute their income to Babbitt, who also has broad discretion to invade the principal of both subtrusts. During her lifetime, Babbitt retains the authority to amend or revoke Trust A. Trust B is irrevocable, and cannot be modified without the written consent of its beneficiaries. Leland's daughter from a previous marriage, Lelia Carol Babbitt, also known as Carol McCormack (McCormack), has a 50 percent remainder interest in Trust A and Trust B.

After Leland's death, McCormack requested an accounting of the trust assets from her stepmother, Babbitt. Dissatisfied with Babbitt's response, McCormack filed a petition on January 9, 2015 under Probate Code section 17200,[1] asking the probate court to compel Babbitt to provide an accounting and the information required by section 16061.7.[2] Babbitt opposed the petition to the extent it sought an accounting of assets other than those in Trust B. She also argued that McCormack did not need an accounting because McCormack already had the original trust documents showing that the "one current trust asset" was the Babbitts' residence in Los Angeles. Babbitt asserted that her efforts to transfer to the trust the other assets that were supposed to be in the trust had been "frustrated and inhibited" by McCormack, who had in her possession the original trust and related documents that were necessary to effect the transfers but would not give them to Babbitt.

---

[1]     Undesignated statutory references are to the Probate Code.

[2]     Probate Code section 16061.7 requires that, when a revocable trust becomes irrevocable, the trustee must so notify the beneficiaries within 60 days of the event that caused the revocable trust to become irrevocable, which in this case was the death of Leland Babbitt. This notification must include the name and address of the trustee, the date of execution of the trust instrument, and a notice that the recipient is entitled, upon reasonable request, to receive from the trustee the "terms of the trust." (§ 16061.7, subd. (g)(5).)

In her reply in support of the petition, McCormack questioned what had happened to the trust assets that had not yet been transferred into the trust, including the "fate of at least $800,000 i[n] cash accounts held in Leland's name within approximately 24 months of his death." For this reason, McCormack asked the court to compel Babbitt to provide a "full report of the activities of the trust and account of the assets . . . for the period May 5, 2011 to the present." At the hearing on McCormack's petition, Babbitt objected to the scope of the accounting, arguing that the Probate Code did not authorize McCormack's request for pre-May 5, 2014 documents and that her request for those documents was untimely because McCormack made the request in her reply brief three days before the hearing.

The court granted McCormack's petition and ordered Babbitt to account "as to the activities of the trust from May 5, 2011 to the present." Babbitt prepared an accounting, but it only included information for the time period of May 5, 2014, the date of Leland's death, through March 2015. Among other things, the report stated that Babbitt had initiated the transfer of the Riverside County property to the trust and had opened a bank account into which she intended to transfer the cash assets of Trust B. The accounting also stated that certain accounts identified in the original trust document did not yet have to be transferred to the trust, no longer existed, or had been consumed, gifted, or changed during Leland's lifetime. The accounting identified an account at Bank of America as "subject to funding into the Trust."[3]

Babbitt subsequently filed a motion to stay the proceedings in the probate court while she sought review of the probate court's order compelling the accounting. The court denied the motion. Babbitt then filed a petition for writ of mandate and a request for a stay. We issued an alternative writ and stayed proceedings in the probate court relating to McCormack's petition for an accounting.

---

[3]     On September 11, 2015 the probate court approved the transfer of the Bank of America account to the trust.

4

**DISCUSSION**

A.  *The Probate Code Authorizes Accountings for Beneficiaries of Irrevocable Trusts*

McCormack asked the probate court to compel Babbitt to provide an accounting of the trust's assets pursuant to sections 16060, 16061, 16062, and 17200, subdivision (b)(7).  Section 16060 sets forth a trustee's general duty to keep beneficiaries "reasonably informed of the trust and its administration."  Section 16061 provides that, except where a trust is revocable, "on reasonable request by a beneficiary, the trustee shall report to the beneficiary by providing requested information to the beneficiary relating to the administration of the trust relevant to the beneficiary's interest."  Section 16062 sets forth a trustee's obligation to account on a regular basis, but provides that contingent or remainder beneficiaries like McCormack are not entitled to an accounting.  (See § 16062 [only beneficiaries to whom "income or principal is required  . . . to be currently distributed" are entitled to an accounting]; *Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 526 (*Esslinger*) ["[a] remainder beneficiary does not have a right to an accounting under Probate Code section 16062"].)  Because McCormack is a remainder beneficiary, she is not entitled to an accounting under section 16062.

Section 17200 authorizes a trustee or beneficiary of an irrevocable trust to petition the court concerning the "internal affairs of the trust."  (*Id.,* subd. (a).)  Section 17200, subdivision (b)(7)(B), gives the probate court discretion to compel a trustee to provide "information about the trust" to a remainder beneficiary where the beneficiary has sought such information under section 16061 and the trustee has failed to provide it within 60 days of the beneficiary's reasonable request.[4]  This information may include an

_____

[4]    McCormack's original petition did not identify which subdivision of section 17200, subdivision (b)(7), she alleged authorized her petition, but neither subdivision (b)(7)(A) nor subdivision (b)(7)(C) applies.  Subdivision (b)(7)(A) allows a court to compel a trustee to provide a copy of the "terms of the trust," but such terms exclude "documents which were intended to affect disposition only while the trust was

accounting, even though remainder beneficiaries are not entitled to such information under section 16062. (See *Esslinger*, *supra*, 144 Cal.App.4th at p. 526 ["[w]hile an accounting under section 16062 is mandatory, information or a particular account under section 16061, sought by petition under section 17200, subdivision (b)(7), lies within the probate court's discretion"].)

"A revocable trust is a trust that the person who creates it, generally called the settlor, can revoke during the person's lifetime." (*Giraldin, supra*, 55 Cal.4th at p. 1062, fn. omitted.) During the time a trust is revocable, section 15800 limits a trustee's obligations to the trust's beneficiaries. In particular, section 15800 provides that trustees of revocable trusts owe their duties not to the beneficiaries but to the settlors of the trust. (See *Giraldin*, *supra*, 55 Cal.4th at p. 1066 [section 15800 makes clear that, "so long as the settlor is alive, the trustee owes a duty solely to the settlor"].) Among the duties postponed by section 15800 are the duties to provide information or an accounting to beneficiaries of revocable trusts under sections 16061 and 16062. (See also § 16069, subd. (a) [limiting trustee's obligations "for the period when the trust may be revoked"].)

The parties do not dispute that Babbitt and her late husband were the sole settlors and co-trustees of the trust, that until Leland's death on May 5, 2014 the trust was fully revocable, and that McCormack is a remainder beneficiary of Trust B. McCormack has not alleged that Leland was incapacitated, incompetent, or subject to undue influence before his death, nor has McCormack asserted a claim against Babbitt on Leland's behalf for breach of fiduciary duty, fraud, or other misconduct as a co-trustee of the trust before

---

revocable." (§ 17200, subd. (b)(7)(A); see § 16060.5 [defining "terms of the trust"].) Subdivision (b)(7)(C) allows a court to compel the trustee to account to the beneficiary where a trustee fails to do so pursuant to section 16062, which does not entitle remainder beneficiaries such as McCormack to an accounting. (*Esslinger*, *supra*, 144 Cal.App.4th at p. 526.) Therefore, the only subdivision of section 17200 that authorizes a court to compel an accounting on behalf of a remainder beneficiary is subdivision (b)(7)(B).

Leland's death.[5] McCormack has also not alleged that Babbitt breached any fiduciary duty owed to the beneficiaries after Leland's death. Babbitt argues that under these circumstances McCormack lacked standing to petition the probate court under section 17200 and that the probate court exceeded its jurisdiction by compelling an accounting for the period of time during which Leland was alive and the trust was revocable. We conclude that McCormack had standing to petition the probate court under section 17200 but that the court erred by ordering Babbitt to account for trust assets before Leland's death.[6]

B. *McCormack Had Standing To Petition the Probate Court for an Accounting of Trust Assets*

Although Babbitt did not raise the issue of standing in the probate court, she does now, and "contentions based on a lack of standing involve jurisdictional challenges and may be raised at any time in the proceeding." (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438; see *Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1043 [lack of standing "is a nonwaivable jurisdictional defect"]; *Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 407 (*Drake*) [""""the issue of standing is so fundamental that it need not

---

[5] In her opposition to Babbitt's petition for writ of mandate, McCormack suggests that Babbitt somehow misused trust assets or neglected Leland while he was alive, but McCormack conceded in the probate court that she "is not saying or alleging that mischief with the trust or trust assets has taken place." McCormack also claims that Babbitt breached her duty as trustee "to care for the welfare and wellbeing of Leland,"but she does not cite any trust provision or statute that creates such a duty and, because she did not make this argument in the probate court, she has forfeited it. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603 [party may not, for the first time on appeal, change the theory of the cause of action or raise new issues not raised in the trial court]; *In re Estate of Westerman* (1968) 68 Cal.2d 267, 278-279 [same].) At oral argument counsel for McCormack confirmed that McCormack is not aware of, and is not claiming, any breach of fiduciary duty owed by Babbitt to Leland or the beneficiaries.

[6] Babbitt argues in the alternative that the scope of the probate court's order violates her constitutional right to privacy. We do not reach this argument.

even be raised below—let alone decided—as a prerequisite to our consideration"""].)
"The interpretation of statutory provisions bearing on the standing issue is a question of law." (*T.P. v. T.W.* (2011) 191 Cal.App.4th 1428, 1433; see *Neil S. v. Mary L.* (2011) 199 Cal.App.4th 240, 249 ["standing is a question of law, particularly where, as here, it depends on statutory provisions conferring standing"].)

Whether a beneficiary has standing to file a petition for an accounting of an inter vivos trust under section 17200 depends on whether the trust is revocable at the time the petition is filed. Until the trust becomes irrevocable, section 15800 limits the rights of beneficiaries to petition for an accounting. "[S]ection 15800 is consistent with the principle that '[p]roperty transferred into a revocable inter vivos trust is considered the property of the settlor for the settlor's lifetime,' and thus, 'the beneficiaries' interest in that property is "'merely potential' and can 'evaporate in a moment at the whim of the [settlor].'"'" (*Drake*, *supra*, 217 Cal.App.4th at p. 407, quoting *Giraldin, supra*, 55 Cal.4th at pp. 1065-1066; see *Giraldin, supra*, at p. 1062 ["beneficiaries' interest in [a revocable] trust is contingent only, and the settlor can eliminate that interest at any time"].) Therefore, before a settlor's death (and in the absence of a showing of incompetence), a contingent beneficiary lacks standing to petition the probate court to compel a trustee to account or provide information relating to the revocable trust. (*Id.* at pp. 1071-1072; *Drake*, at pp. 408-409.)

After a settlor's death, however, "the rights of the contingent beneficiaries are no longer contingent. Those rights, which were postponed [by section 15800] while the holder of the power to revoke was alive, mature into present and enforceable rights under . . . the trust law." (*Giraldin*, *supra*, 55 Cal.4th at p. 1070.) Under section 17200, "a contingent beneficiary may petition the court subject only to the limitations provided in section 15800." (*Id.* at p. 1069.) Thus, after a settlor dies and the trust or a portion of the trust becomes irrevocable, section 17200 gives a contingent beneficiary standing to petition the probate court for an accounting of assets. (*Giraldin*, *supra*, 55 Cal.4th at p. 1070.)

8

McCormack petitioned the probate court for an accounting after Leland's death when a portion of the trust had become irrevocable. She therefore had standing under section 17200 to bring a petition. The fact that she had standing to bring her petition, however, does not mean she was entitled to all of the relief she sought in her petition.

C. *The Probate Court Erred by Compelling Babbitt To Account for Revocable Trust Assets*

The probate court has general power and the duty to supervise the internal affairs and administration of trusts. (*Christie v. Kimball* (2012) 202 Cal.App.4th 1407, 1413; *Schwartz v. Labow* (2008) 164 Cal.App.4th 417, 426.) "To preserve [a] trust and to respond to perceived breaches of trust, the probate court has wide, express powers to 'make any orders and take any other action necessary or proper to dispose of the matters presented' by [a] section 17200 petition." (*Schwartz v. Labow*, at p. 427; see § 17206.) The probate court, however, must exercise those powers "within the procedural framework laid out in the governing statutes" of the Probate Code. (*Ferraro v. Camarlinghi* (2008) 161 Cal.App.4th 509, 546.) We review the probate court's construction of the Probate Code de novo. (*Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 93; *Araiza v. Younkin* (2010) 188 Cal.App.4th 1120, 1124.)

Section 17200, subdivision (a), states: "Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning *the internal affairs of the trust* or to determine the existence of the trust." (Italics added.) As noted, section 15800 does not preclude a contingent beneficiary such as McCormack from petitioning the probate court under section 17200 after the trust or a portion of the trust becomes irrevocable. The issue is whether the term "the internal affairs of the trust" includes an accounting of assets held by the trust while it was revocable where, as here, the trustee and the settlor were the same person.

The term "internal affairs of a trust" includes "information about the trust under Section 16061." (§ 17200, subd. (b)(7)(B).)  Section 16061 provides that, except where a trust is revocable, "the trustee shall report to the beneficiary by providing requested information . . . relating to the administration of the trust *relevant to the beneficiary's interest*." (Italics added.)  The term "internal affairs of a trust" also may include information sought pursuant to section 16060, which requires trustees to keep beneficiaries "reasonably informed of the trust and its administration." (See *Salter v. Lerner* (2009) 176 Cal.App.4th 1184, 1187 [recognizing a beneficiary's right to petition the probate court for information under section 16060].)  "The duty to provide information under section 16060 'is independent of, and potentially even broader than[,] the duty to report under . . . section 16061 or to account under . . . section 16062.'" (*Id.* at p. 1188.)  Information sought under section 16060, however, must be "'reasonably necessary to enable the beneficiary to enforce *the beneficiary's rights under the trust or prevent or redress a breach of trust*.'" (*Id.* at p. 1187, italics added.)  Thus, under sections 16061 and 16060, the term "internal affairs of the trust" includes information relevant to the beneficiary's interests, information necessary to enforce the beneficiary's rights, and information that could prevent or redress a breach of trust.

Because assets held in a revocable trust essentially belong to the settlor, the settlor may dispose of the trust's assets and effectively eliminate the beneficiaries' interest altogether "with no need to justify or explain" his or her actions.  (Rest.3d Trusts, § 74, com. a, p. 25; see *Giraldin*, *supra*, 55 Cal.4th at p. 1072 ["California courts have considered the Restatement of Trusts in interpreting California trust law"].)  Indeed, "the authority and rights of settlors . . . are not subject to fiduciary obligations." (Rest.3d Trusts, *supra*, § 74, com. a, p. 25; see *Giraldin*, at p. 1066.)  Where, as here, the assets were held in trust as community property, either spouse could have revoked the trust or

10

withdrawn trust assets at his or her discretion while the trust was revocable.[7] (See Fam. Code § 761, subd. (b); Rest.3d Trusts, § 63, com. k, p. 461.)

Thus, during Leland's lifetime, and as long as he was competent, "the trust beneficiaries were powerless to act regarding the trust." (*Giraldin*, *supra*, 55 Cal.4th at p. 1067.) During that period, the co-trustees could not have had any liability for "fail[ing] to sufficiently preserve" the beneficiaries' interests. (*Id.* at p. 1071; see § 16462, subd. (a) [trustee of revocable trust is not liable to beneficiary for acts condoned by settlor or other person with power to revoke].) Nor could the beneficiaries have petitioned the probate court for information concerning the trust, including asking for the reports or accountings required by sections 16061 and 16062, and the beneficiaries were not entitled to a copy of the "terms of the trust." (§ 17200, subds. (a), (b)(7)(A).)[8]

Leland's death did not give the beneficiaries a right to obtain information about the disposition of assets while the trust was revocable as "internal affairs of the trust" under the Probate Code. In the absence of any claim that Leland was incompetent or subject to undue influence, nothing that an accounting of such assets after his death might reveal could support a claim for breach of trust based on actions that occurred before his death. Thus, the probate court erred by compelling Babbitt to account for trust assets while the trust was revocable.

While the list of proceedings in section 17200, subdivision (b), that concern the "internal affairs of the trust" is non-exclusive, the legislative history of the statutes governing the reporting and accounting provisions of the Probate Code confirms that this phrase does not include an accounting or information concerning trust assets while the trust was revocable where the settlor and trustee are the same person. The legislative

---

[7]    The Babbitts' trust provides that either grantor can revoke the trust in whole or in part and bind the trust without first obtaining the consent of the other grantor.

[8]    The Probate Code's definition of "terms of the trust" excludes "documents which were intended to affect disposition only while the trust was revocable." (§ 16060.5.)

history of section 16069, which excuses a trustee, while a trust is revocable, from complying with sections 16061, 16062, and 17200, subdivision (b)(7)(A), shows that the Legislature understood beneficiaries would not have a right to an accounting of revocable trust assets: "Revocable trusts are different from irrevocable trusts in that the contents of a revocable trust can be amended without approval from the beneficiaries. For this reason, the contents of revocable trusts should remain secret from beneficiaries so as to ensure the settlor's intent is fully realized, without undue pressure from potential beneficiaries." (Governor's Office of Planning and Research, enrolled bill rep. on Sen. Bill No. 202 (2009-2010 Reg. Sess.) Sept. 1, 2010, p. 5.)[9] The Legislature demonstrated a similar understanding when it amended the definition in section 16060.5 of "terms of the trust" to clarify that information "regarding investment instructions and requests for withdrawals during the period when a trust was revocable" are not required disclosures. (Dept. of Consumer Affairs, enrolled bill rep. on Assem. Bill No. 2069 (1997-1998 Reg. Sess.) Aug. 24, 1998, p. 3.) One of the purposes of this amendment was to clarify that only documents and trust provisions "that describe or affect an *irrevocable* trust . . . must be disclosed." (*Ibid*.; see also § 16060.7 [excusing trustee from providing "terms of the trust" while trust is revocable].)

The primary case on which McCormack relies, *Giraldin*, *supra*, 55 Cal.4th 1058, actually supports Babbitt. *Giraldin* involved a third-party trustee who owed a fiduciary duty to the settlor and whose breach of that duty could "substantially harm the beneficiaries by reducing the trust's value against the settlor's wishes." (*Id.* at p. 1062.) Here, that did not and could not happen because the trustees and settlors were one and the

---

[9]     In construing a statute, bill reports and other legislative records are "'appropriate sources from which legislative intent may be ascertained.'" (*Mt. Hawley Insurance Company v. Lopez* (2013) 215 Cal.App.4th 1385, 1401; see *Ste. Marie v. Riverside County Regional Park and Open-Space District* (2009) 46 Cal.4th 282, 291 [relying on enrolled bill report to interpret a statute]; *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1263-1264 [using enrolled bill reports to determine the scope of legislative debate].)

same.[10] As the Supreme Court in *Giraldin* explained, through the use of what the court called a "colorful" hypothetical, settlors like Leland and Babbitt may dispose of revocable trust assets however they please without incurring any liability to contingent beneficiaries: "'[I]f the settlor of a revocable trust learned he had a terminal disease, and was going to die within six months, he might decide that his last wish was to take his mistress on a deluxe, six-month cruise around the world—dissipating most of the assets held in his trust. The trustee, whose duties are owed to the settlor at that point, would have no basis to deny that last wish,'" and could not be liable for failing to preserve the assets of the trust for the beneficiaries. (*Ibid*.) Like the dying cruise voyager in the *Giraldin* hypothetical, Leland and Babbitt owed their duties as trustees only to themselves before part of the trust became irrevocable, and they did not need to account to the beneficiaries for the disposition of trust assets during that time.

Finally, courts in other jurisdictions that have considered whether a beneficiary can compel an accounting of revocable trust assets where the settlor and trustee were the same person, or where there is no evidence that the beneficiaries were damaged by a breach of duty to the settlor while the trust was revocable, have reached a similar result, although often because the beneficiaries lacked standing. For example, in *In re Trust No. T-1 of Trimble* (Iowa 2013) 826 N.W.2d 474 the court held that, while a trust is revocable, "the trustee owes duties exclusively to the settlor and the settlor has full discretion to do what she wishes with her assets—whether it works to the benefit of the

---

[10] The other cases cited by McCormack are similarly distinguishable because, like *Giraldin*, they involved third-party trustees who owed fiduciary duties to the settlor during the settlor's lifetime or to the beneficiaries after the death of the settlor. (See *Christie v. Kimball*, *supra*, 202 Cal.App.4th at pp. 1410-1411; *Esslinger*, *supra*, 144 Cal.App.4th at pp. 520-521; *Evangelho v. Presoto* (1998) 67 Cal.App.4th 615, 618.) Although some courts have allowed beneficiaries to obtain an accounting for periods before a settlor's death where the settlor had "'lost capacity, was under undue influence, or did not approve or ratify the trustee's conduct'" (*Giraldin*, *supra*, 55 Cal.4th at p. 1073; see *Drake*, *supra*, 217 Cal.App.4th at p. 407), McCormack has not asserted any such claim on Leland's behalf.

13

beneficiaries of the trust or not." (*Id.* at p. 487; see *Tseng v. Tseng* (Or. App. 2015) 271 Or.App. 657, 669, fn. 3 ["[b]ecause the settlor retains complete control over the trust during the settlor's lifetime, actions by a settlor/trustee cannot harm the interests of a beneficiary in any cognizable way"].) The court in *Trimble* concluded that "[a] trustee who owes no accounting to beneficiaries while the trust is revocable should not face retroactive accounting duties for the same period upon the settlor's death." (*Trimble*, at p. 489.)

Similarly, in *Matter of Malasky* (N.Y. App. Div. 2002) 290 A.D.2d 631 a husband and wife created a joint revocable living trust and named themselves trustees. (*Id.* at p. 631.) After the husband died, his children from a prior marriage sought an accounting from their stepmother of the trust assets from the trust's inception to the date of their father's death. (*Ibid.*) The court in *Malasky* held that, because the settlors also acted as trustees and retained the power to revoke or amend the trust at any time, the stepchildren had no pecuniary interest in the revocable trust until their father's death, and therefore could not seek an accounting of assets while the trust was revocable. (*Id.* at p. 632.)[11]

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of April 22, 2015 and to enter a new order excluding the period of time between May 5, 2011 and May 5, 2014 from the order compelling Babbitt to provide an

---

[11] McCormack also argues that the doctrine of unclean hands bars Babbitt from seeking relief in this court because, according to McCormack, Babbitt has repeatedly underreported the cash and real property held by the trust. For example, McCormack complains that Babbitt originally represented that the only asset in the trust was the Los Angeles residence, but later identified "another approximate $300,000 in trust assets." McCormack mischaracterizes Babbitt's representations, which appear to have been accurate when she made them. After Leland's death and the commencement of these proceedings, Babbitt began transferring additional assets into the trust, as set forth in her April 27, 2015 accounting.

accounting of trust assets.  The stay of proceedings issued June 3, 2015 is vacated. Petitioner is to recover her costs in connection with this petition.


SEGAL, J.


We concur:


PERLUSS, P. J.


BLUMENFELD, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.