Filed 9/16/20  Venuti v. Venuti CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ADRIAN VENUTI et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>MARC VENUTI et al.,<br><br>Defendants and Respondents. | H044922<br>(Santa Clara County<br>Super. Ct. No. 16-PR-180116) |

This appeal arises from a dispute between half-siblings over a family trust. Odette and Adrian Venuti petitioned the probate court to compel trustee Michael Venuti to account for the 1984 Venuti Living Trust for the period from September 1, 2011 to the present.  Prior to any discovery and based solely on the pleadings, the probate court granted in part and denied in part that request.  The court further determined that Odette and Adrian lack standing to request accounting for the period prior to September 2011 (an issue that was not before it) and denied them leave to amend their petition to adequately allege such standing.  On appeal, Odette and Adrian challenge the partial denial of their request for accounting, the probate court's determination that they lack standing to request accounting for the period prior to September 2011, and the denial of their motion for leave to amend their petition.  We reverse and remand with directions.

## I.    FACTUAL BACKGROUND

### A.    *The Venuti Family and the 1984 Trust*

Alexandre and Louise Venuti moved from Canada to California in the early 1960s with their young sons Marc and Michael.  Alexandre had two older children from a prior marriage—Odette and Adrian.

Alexandre and Louise settled the 1984 Venuti Living Trust (the 1984 Trust), of which they were the trustors and initial trustees.  Alexandre died in 1989.  Upon his death, pursuant to the terms of the 1984 Trust, the trust estate was divided into two separate trusts—the Marital Trust (consisting of Louise's share of community property held in the trust, Louise's separate property held in the trust, and an amount equal to the maximum marital deduction allowable for federal estate tax purposes) and the Residuary Trust (consisting of the balance of the trust estate).  The Residuary Trust became irrevocable upon Alexandre's death.  The 1984 Trust provided that, upon the death of the surviving trustor (here, Louise), the balance of the Marital Trust estate was to be distributed "to such person or persons . . . as the surviving Trustor shall appoint" and the Residuary Trust estate was to be divided equally among the trustors' children (i.e., Odette, Adrian, Marc, and Michael).  In the event that the surviving trustor failed to exercise the power to appoint persons to whom the Marital Trust estate should be distributed, the Marital Trust estate was to be distributed to the Residuary Trust.

### B.    *Louise Amends the 1984 Trust*

In August 1990, Louise executed an amendment to 1984 Trust (the First Trust Amendment).  The First Trust Amendment subdivided the Marital Trust into two subtrusts—the Survivor's Trust and the Qualified Domestic Trust.  The amendment was executed, in part, to comply with provisions of the Internal Revenue Code and certain Treasury Regulations applicable to non-citizens because Louise was, at the time, a Canadian citizen. The First Trust Amendment called for the balance of the Survivor's Trust estate to be distributed, upon Louise's death, "to such person or persons . . . as the

surviving Trustor shall appoint" or to the Residuary Trust estate if she failed to make such an appointment. The First Trust Amendment provided that any remaining principal of the Qualified Domestic Trust be distributed according to the Residuary Trust distribution provisions upon Louise's death. The First Trust Amendment appointed Marc to act as co-trustee of the Qualified Domestic Trust with Louise.

Louise executed another trust amendment (the Second Trust Amendment) approximately six months later, in February of 1991. The Second Trust Amendment changed the distribution of the Survivor's Trust estate after Louise's death. It provided that the balance of the Survivor's Trust estate was to be distributed to such persons as Louise appointed or, if she failed to do so, equally to Marc and Michael.

### C. *Louise Resigns as Trustee and Appoints Michael as Trustee*

On September 1, 2011, Louise resigned as co-trustee of the Qualified Domestic Trust and as trustee of the Survivor's and Residuary Trusts. At the same time, Louise appointed Michael as sole successor trustee of all three subtrusts.

### D. *Louise's Death and Initial Settlement Discussions*

Louise died on February 27, 2016, at which time the Qualified Domestic Trust and the Survivor's Trust became irrevocable. In July 2016, Marc, Michael, Odette, and Adrian entered into a stipulation to suspend the tolling of the statute of limitations governing trust contests. They engaged in settlement discussions and considered splitting all of the trust assets equally.

In October 2016, Michael, in his capacity as trustee, retained new counsel. He subsequently withdrew "any prior offers or suggestions regarding any alternate distribution of th[e] estate" and indicated that he intended to administer and distribute the trust estate in accordance with the terms of the trust agreement. On December 19, 2016, counsel for Michael in his capacity as trustee informed Odette and Adrian by letter that he was terminating the tolling agreement.

3

## II.    PROCEDURAL HISTORY

On December 23, 2016, Michael (as trustee) filed a petition seeking instructions and orders to administer the trust pursuant to its terms, as amended.

On January 5, 2017, Odette and Adrian filed a petition seeking, among other things, orders removing Michael as trustee; instructing the trustee to account for all actions taken as trustee since September 1, 2011; determining that the Second Trust Amendment is invalid or has been revoked; and for damages for financial elder abuse. Odette and Adrian's petition included allegations that Marc and Michael "systematically manipulated" Louise "to enrich themselves"; on information and belief that "Louise believed the Second Amendment was either invalid or that Louise had revoked the Second Amendment by September 1, 2011"; and on information and belief that "Louise was unable to manage the Trust properties or supervise Trustee Michael Venuti's management of the Trust properties from at least the date of the Resignation."

Michael and Marc, in their capacities as trust beneficiaries, joined the trustee's petition for instructions on February 21, 2017.

Michael, as trustee, filed objections to Odette and Adrian's petition on February 22, 2017.  As to their request for accounting, the objections stated that the trustee was willing to provide accounting from the date of Louise's death, but argued that Adrian and Odette lacked standing to request or compel an accounting for any prior dates.

The Probate court held its first hearing on the petitions on February 27, 2017. The parties raised the issue of accounting, with Odette and Adrian's counsel arguing that they were entitled to accounting back to September 2011, when Michael became trustee. The trustee's counsel responded that Odette and Adrian were entitled to accounting only back to the date of Louise's death in 2016.  The court suggested that they brief the accounting issue first and "take care of that" prior to engaging in discovery.  The parties did not object to that proposal.  Accordingly, the court directed the parties to brief the

4

issues of "which trust . . . needs to be accounted for . . . [a]nd then the date when the accounting goes back to."

Odette and Adrian's brief was somewhat vague as to the appropriate scope of accounting. It stated: "Without question, Trustee Michael Venuti must account for his administration of the Trust and all subtrusts since he became sole trustee in September 2011. Trustee Marc Venuti should be ordered to account for his period of administration due to the indications that he did not manage the Trust for the benefit of the settlor." The brief requested an "order instructing trustees to account from the date that any portion of the trust became irrevocable or such earliest date that the court deems proper."

The court held a hearing on the accounting issue in April 2017. At that time, counsel for Marc sought to clarify whether Odette and Adrian were seeking accounting for the period prior to September 2011. Odette and Adrian's counsel responded, "The pleading requests an accounting for 2011 forward of all trusts."

The probate court issued its order regarding accounting on May 17, 2017. The court framed its order, which it captioned "Decision Re Adrian Venuti and Odette Venuti's Standing to Seek Trust Accountings," as determining Odette and Adrian's "standing to make the requests" for accounting. Reasoning that the allegations in Odette and Adrian's petition were insufficient to support a claim of incompetence or undue influence and that "Louise served in the capacity of Co-Trustee or Trustee until September 1, 2011," the court concluded that Odette and Adrian "either lack standing to request or the Probate Court lacks jurisdiction to order the Trustees to provide any accounting before the date of September 1, 2011." The court ordered accounting of the Qualified Domestic Trust and the Residuary Trust from September 1, 2011 forward, implicitly finding that Odette and Adrian not only had standing to request such accounting but were entitled to it. Finally, the court stated "[n]o accounting is ordered for the Survivor's Trust as [Odette and Adrian] are not beneficiaries" of that subtrust.

5

On May 30, 2017, Odette and Adrian moved for reconsideration of the May 17 order.  They also requested leave to amend their petition to allege additional facts to establish standing to seek accounting for the pre-September 2011 period and to add claims of estoppel and breach of fiduciary duty.

The court held a hearing on those motions on June 29, 2017.  The court declined to change its May 17 ruling on accounting and denied the motion for leave to amend the petition.  As to the motion for leave to amend, the court explained that it was denying the motion only to the extent that Odette and Adrian were seeking to include new facts in an effort to establish standing to seek accounting for dates prior to September 1, 2011.  The court stated:  "If you see that there was abuse, elder abuse, financial abuse, or anything else that was done wrong, you're free to put that and amend your petition to include that."  "I'm just saying you couldn't amend it to change the order that I made regarding standing.  If you choose . . . you can always amend your petition."

On July 13, 2017, Odette and Adrian appealed from the May 17 and June 29 orders.[1]  Specifically, they challenge the May 17 accounting order to the extent the court determined that they lack standing to request accounting for the pre-September 2011 period and denied them any accounting of the Survivor's Trust.  They challenge the June 29 denial of their request for leave to amend their petition.

---

[1] Odette and Adrian later appealed from a subsequent order issued in August 2017.  However, they have since abandoned their appeal of that order by not addressing it in their briefs.

## III.   DISCUSSION

### A.   *The Motions to Dismiss the Appeal are Denied*

Michael (as trustee) and Marc and Michael (as beneficiaries) have moved to dismiss the appeal, arguing it is premature in the absence of a final judgment. For the reasons set forth below, we disagree and deny their motions.[2]

### 1.   *Appealability of Probate Court Orders*

"Generally, rulings in probate proceedings are not appealable unless expressly made appealable by statute." (*Estate of Martin* (1999) 72 Cal.App.4th 1438, 1441-1442.) The Probate Code expressly provides that orders granting or denying petitions to compel an accounting are not appealable. (Prob. Code, § 1304, subd. (a)(1) ["With respect to a trust, the grant or denial of the following orders is appealable: [¶] (a) Any final order . . . except the following: [¶] (1) Compelling the trustee to submit an account or report acts as trustee"].)[3] And the Probate Code does not identify orders denying leave to amend as being appealable.

Importantly, however, "the appealability of an order of the probate court is determined not from its form, but from its legal effect." (*Estate of Martin*, *supra*, 72 Cal.App.4th at p. 1442.) "An order is appealable, even if not mentioned in the Probate Code as appealable, if it has the same effect as an order the Probate Code expressly makes appealable." (*Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 755.)

---

[2] Odette and Adrian, in connection with their opposition to the motions to dismiss the appeal, have requested that we take judicial notice of documents filed in the probate court subsequent to the filing of the notice of appeal and of Louise's death certificate. We deny the request to take judicial notice of subsequently filed court documents because they are not relevant to our resolution of the appeal. (*Jordache Enterprises*, *Inc. v. Brobeck*, *Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].) We grant the request to take judicial notice of Louise's death certificate. (18 Cal.4th 739, 748, 452; *People v. Terry* (1974) 38 Cal.App.3d 432, 439.)

[3] All further statutory references are to the Probate Code unless otherwise indicated.

An order determining the existence of a power, duty, or right under a trust is made appealable by sections 1304, subdivision (a) and 17200, subdivision (b)(2). (*Esslinger v. Cummins* (2006) 144 Cal.App.4th 517, 523 (*Esslinger*).) Because appealability depends on legal effect, not form, an order to account is appealable when it expressly or implicitly decides the existence of a power, duty, or right under a trust. (*Id.* at pp. 522-523 [holding that an order directing a trustee to prepare accountings was appealable because it determined that a remainder beneficiary had the power or right to request an accounting].)

In view of the foregoing, to determine whether the orders are appealable, we must determine their legal effect.

2.      *Legal Effect of the Appealed-From Orders*

The May 17 order contained three distinct rulings. First, the probate court determined that Odette and Adrian had failed to adequately plead that Louise was incompetent or subject to undue influence during the pre-September 2011 period, such that they lacked standing to request or the court lacked jurisdiction to order any accounting for that period (the pre-September 2011 ruling). Second, the court ordered accounting of the Qualified Domestic Trust and the Residuary Trust from September 1, 2011 forward, thereby implicitly ruling that Odette and Adrian not only had standing to request such accounting, but also are entitled to such accounting on the merits (the post-September 2011 ruling). Third, the court declined to order accounting for the Survivor's Trust (the Survivor's Trust ruling). Odette and Adrian challenge only the pre-September 2011 and Survivor's Trust rulings.

In assessing the legal effect of those rulings, we are mindful of the distinction between *standing* to request relief, such as accounting, and *entitlement* to such relief. (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1144 (*Babbitt*) ["The fact that she had standing to bring her petition [for an accounting of the trust], however, does not mean she was entitled to all of the relief she sought in her petition"].) " ' "Standing" is a

8

party's right to make a legal claim and is a threshold issue to be resolved before reaching the merits of an action.' [Citation.]" (*Dent v. Wolf* (2017) 15 Cal.App.5th 230, 233-234.) Standing is a threshold issue because " 'without it no justiciable controversy exists. . . . Typically, the issue of standing is decided by reference to the allegations made in a party's complaint.' " (*Shapell Industries, Inc. v. Superior Court* (2005) 132 Cal.App.4th 1101, 1111.) By contrast, a party's entitlement to relief depends on their ability to prove their factual allegations.

The pre-September 2011 ruling was based on perceived pleading deficiencies. In its subsequent June 29 order, the court denied Odette and Adrian leave to amend their petition to attempt to cure those deficiencies. The combined legal effect of those rulings was to determine that Odette and Adrian lack the power or right to request accounting of the Residuary and Qualified Domestic Trusts prior to September 1, 2011. As such, they are appealable. (*Esslinger*, *supra*, 144 Cal.App.4th at p. 523.)

The basis for the Survivor's Trust ruling is ambiguous. As noted above, the court framed the order as determining Odette and Adrian's standing to request accounting, which suggests the ruling was based on lack of standing. Yet, in the unchallenged post-September 2011 ruling, the court determined Odette and Adrian's entitlement to accounting of the Qualified Domestic Trust and the Residuary Trust from September 1, 2011 forward. The Survivor's Trust ruling immediately followed the post-September 2011 ruling, suggesting the court may have denied Odette and Adrian's request for accounting of the Survivor's Trust on the merits. To the extent the Survivor's Trust ruling was premised on a perceived failure to adequately allege standing, the combined effect of that ruling and the order denying leave to amend was to determine that Odette and Adrian lack the power or right to obtain accounting of the Survivor's Trust and it is appealable. (*Esslinger*, *supra*, 144 Cal.App.4th at p. 523.) Alternatively, if the Survivor's Trust ruling was a ruling on the merits, its effect was the same given that the court did not indicate that the denial of the request for accounting was without prejudice

9

to a later showing of entitlement. Thus, either way, the Survivor's Trust ruling is appealable.

For the foregoing reasons, we deny the pending motions to dismiss the appeal.

**B.**     ***The Probate Court Erred in Ruling on Odette and Adrian's Standing to Request Pre-September 2011 Accounting, an Issue Not Before It***

Odette and Adrian challenge the probate court's ruling that they lacked standing to request (or the court lacked jurisdiction to order) any accounting for the pre-September 2011 period. We agree that the pre-September 2011 ruling cannot stand.

Odette and Adrian sought accounting from September 1, 2011 forward. They cited the September 1, 2011 date in their petition, at the February 2017 hearing, and again at the April 2017 hearing. In their opening appellate brief, Odette and Adrian take the position that they effectively amended their prayer for relief to request accountings dating back to 1989. They did not. They acknowledge as much in their reply brief where they assert that "the pre-2011 period was not an issue presented to the probate court for resolution at all." We agree; the issue of accounting before September 1, 2011 was not before the court.

Nevertheless, the court decided that Odette and Adrian "either lack standing to request or the Probate Court lacks jurisdiction to order the Trustees to provide any accounting before the date of September 1, 2011." That aspect of the court's order is beyond the scope of the pleadings, constitutes an inappropriate advisory opinion, and shall be reversed.

**C.**     ***The Survivor's Trust Ruling***

Odette and Adrian also challenge the probate court's refusal to order accounting of the Survivor's Trust.

*1.     Legal Principles and Standard of Review*

"A revocable trust is a trust that the person who creates it, generally called the settlor, can revoke during the person's lifetime. The beneficiaries' interest in the trust is

10

contingent only, and the settlor can eliminate that interest at any time. When the trustee of a revocable trust is someone other than the settlor, that trustee owes a fiduciary duty to the settlor, not to the beneficiaries, as long as the settlor is alive. During that time, the trustee needs to account to the settlor only and not also to the beneficiaries. When the settlor dies, the trust becomes irrevocable, and the beneficiaries' interest in the trust vests." (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1062, fn. omitted.)

Section 15800 provides that, except in certain specified circumstances not relevant here, "during the time that a trust is revocable and the person holding the power to revoke the trust is competent: [¶] (a) The person holding the power to revoke, and not the beneficiary, has the rights afforded beneficiaries under this division. [¶ and] (b) The duties of the trustee are owed to the person holding the power to revoke." Courts have construed section 15800 to mean that during a settlor's life "(and in the absence of a showing of [the settlor's] incompetence), a contingent beneficiary lacks standing to petition the probate court to compel a trustee to account . . . [a] revocable trust." (*Babbitt*, *supra*, 246 Cal.App.4th at p. 1144.)

Generally, a settlor's "death [does] not give the beneficiaries a right to obtain information about the disposition of assets while the trust was revocable . . . ." (*Babbitt*, *supra*, 246 Cal.App.4th at p. 1146.) However, an exception to that general rule applies where someone other than the settlor acted as trustee while the settlor was alive and the trust was revocable. (*Id*. at p. 1139.) In that circumstance, "after the settlor's death, the beneficiaries [do] have standing to assert a breach of the fiduciary duty the trustee owed to the settlor to the extent that breach harmed the beneficiaries." (*Estate of Giraldin*, *supra*, 55 Cal.4th at p. 1076.) That standing includes standing to request an "accounting and information from the trustee regarding trust assets and transactions during the time period before the trust became irrevocable." (*Babbitt*, *supra*, at p. 1139.)

11

"[A]fter a settlor dies and the trust or a portion of the trust becomes irrevocable, section 17200 gives a contingent beneficiary standing to petition the probate court for an accounting of assets. [Citation.]" (*Babbitt*, *supra*, 246 Cal.App.4th at p. 1144.)

Section 16062, which provides that contingent or remainder beneficiaries are not entitled to accounting *on a regular basis*, does not preclude such beneficiaries from petitioning the probate court for an accounting of assets. (*Babbitt*, *supra*, 246 Cal.App.4th at pp. 1141-1142 [citing *Esslinger, supra,* 144 Cal.App.4th at p. 526 for the proposition that "[w]hile an accounting under section 16062 is mandatory, information or a particular account under section 16061, sought by petition under section 17200, subdivision (b)(7), lies within the probate court's discretion"].)

"We review the probate court's construction of the Probate Code de novo." (*Babbitt*, *supra*, 246 Cal.App.4th at p. 1144.) We review the existence of standing to sue based on undisputed facts (or based on properly pled allegations taken as true) de novo. (*A.J. Fistes Corp. v. GDL Best Contractors*, *Inc*. (2019) 38 Cal.App.5th 677, 687.)

### 2. Analysis

As discussed above, the basis for the court's ruling as to the Survivor's Trust is unclear.[4]

---

[4] Odette and Adrian take the position that the court's ruling was based on lack of standing. In their capacities as beneficiaries, Marc and Michael suggest the court determined Odette and Adrian's "*entitlement* to accountings as a threshold issue." (Italics added.) As trustee, Michael says the ruling was based on lack of standing. But he goes on to assert that, if Odette and Adrian "ultimately . . . prevail on their claim that the Second [Trust] Amendment is invalid or revoked, they would then have standing to compel an accounting." It appears that the trustee is conflating the issues of standing to request accounting and entitlement on the merits to accounting. As discussed above, standing (i.e., the right to make a legal claim) typically is decided based on the allegations in the complaint or petition. Odette and Adrian's ability to prove their allegations—though pivotal to their entitlement to accounting—has no bearing on whether they have standing, at the pleading stage, merely to request accounting.

12

To the extent that the court concluded that Odette and Adrian lack standing to request accounting of the Survivor's Trust based on the allegations in their petition, it erred. The petition alleged (and the 1984 Trust, the First Trust Amendment, and Second Trust Amendment show) that Odette and Adrian were beneficiaries of the Survivor's Trust until Louise executed the Second Trust Amendment, which removed them as beneficiaries of that subtrust. The petition further alleged that the Second Trust Amendment "is fatally flawed in its structure" and that "Louise believed the Second Amendment was either invalid or that Louise had revoked the Second Amendment by September 1, 2011."

"[W]hen a demurrer or pretrial motion to dismiss challenges a complaint on standing grounds, the court . . . determine[s] standing by treating the properly pled allegations as true." (*Barefoot v. Jennings* (2020) 8 Cal.5th 822, 827.) Here, there was no demurrer or motion to dismiss. Rather, the court elected, with the parties' agreement, to determine the issue of Odette and Adrian's standing to request accounting as a threshold matter and on the pleadings before any discovery had been conducted. As such, the procedural posture was akin to a demurrer and the court was required to assume the truth of the allegations in Odette and Adrian's petition.

Accepting the allegations in the petition as true and construing them liberally, Odette and Adrian adequately alleged that the Second Trust Amendment is invalid such that they remain beneficiaries of the Survivor's Trust. Beneficiaries have standing to request accounting, as discussed above and as the court ruled with respect to the subtrusts of which Odette and Adrian undisputedly are beneficiaries (the Residuary and Qualified Domestic Trusts).

That is not to say that the court should have ordered accounting based solely on the allegations in the petition. Such an order is not proper unless and until Odette and Adrian prove their entitlement to accounting by showing the Second Trust Amendment is invalid.

13

To the extent that the court concluded that Odette and Adrian have standing to request accounting of the Survivor's Trust but are not currently entitled to such an accounting, having not yet proven their allegations that the Second Trust Amendment is invalid, it did not err. The validity of the Second Trust Amendment, and by extension Odette and Adrian's status in connection with the Survivor's Trust, are issues that remain to be litigated. However, at this early stage, any denial of the request for accounting on the merits must be without prejudice to a later request after the validity of the Second Trust Amendment has been litigated.

Odette and Adrian also advance a second theory supporting their request for accounting of the Survivor's Trust. They say that such an accounting is necessary for them to protect their interests in the Residuary Trust. Specifically, they contend that records from the Survivor's Trust are "reasonably likely to be necessary to determine whether" the trustee violated restrictions set forth in the 1984 Trust on distributions of Residuary Trust principal to the surviving spouse. They further argue that section 17206, which grants the probate court discretion to "make any orders and take any other action necessary or proper to dispose of the matters presented by [a] petition," authorizes the court to order (and, by extension, them to request) an accounting of the Survivor's Trust. The petition contains no allegations supporting the foregoing theory. Accordingly, the probate court did not err to the extent it concluded Odette and Adrian lacked standing to seek accounting of the Survivor's Trust on this alternate theory. And, to the extent the court made a ruling on the merits, it plainly did not abuse its discretion in declining to order an accounting of the Survivor's Trust based solely on Odette and Adrian's conjecture that an accounting of the Survivor's Trust might have some bearing on their rights as beneficiaries of the Residuary Trust.

14

### D. *The Court Erred by Denying Odette and Adrian Leave to Amend*

The probate court denied Odette and Adrian leave to amend—for the first time—their petition to cure pleading deficiencies identified in the May 17 accounting order. That was error.

A court may, in its discretion, allow an amendment to any pleading upon any terms as may be just. (Code Civ. Proc., § 473, subd. (a)(1).) " 'There is a policy of great liberality in permitting amendments to the pleadings at any stage of the proceeding.' " (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 945.) We review an order denying leave to amend for abuse of discretion. (*Ibid.*) " ' "When a request to amend has been denied, an appellate court is confronted by two conflicting policies. On the one hand, the trial court's discretion should not be disturbed unless it has been clearly abused; on the other, there is a strong policy in favor of liberal allowance of amendments. This conflict 'is often resolved in favor of the privilege of amending, and reversals are common where the appellant makes a reasonable showing of prejudice from the ruling.' " [Citation.] . . .' '[I]t is an abuse of discretion to deny leave to amend where the opposing party was not misled or prejudiced by the amendment. [Citation.]' " (*Ibid.*)

Marc and Michael defend the court's order on the ground that it was narrow—it merely prohibited Odette and Adrian from curing the pleading defects that led the court to conclude they lacked standing to request accounting. That argument runs counter to the state's strong policy "that liberal interpretation and amendment of pleadings is strongly favored . . . to allow resolution of actions on the merits in furtherance of substantial justice between the parties." (*Dieckmann v. Superior Court* (1985) 175 Cal.App.3d 345, 352.) And it ignores the governing principle that a court abuses its discretion by denying leave to amend if there is a reasonable possibility a pleading defect can be cured by amendment and the opposing party was not misled or prejudiced by the amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

15

**IV.    DISPOSITION**

The May 17 and June 29 orders are reversed and the cause is remanded to the probate court.  On remand, the probate court is directed to enter a new order (1) omitting any discussion of Odette and Adrian's standing to request accountings for the pre-September 1, 2011 period; (2) ordering accounting of the Residuary and Qualified Domestic Trusts from September 1, 2011; (3) concluding that Odette and Adrian have standing to request accounting of the Survivor's Trust; and (4) granting Odette and Adrian leave to amend their petition.

The parties shall bear their own costs on appeal.

_____

ELIA, J.

WE CONCUR:


_____

PREMO, Acting P.J.


_____

BAMATTRE-MANOUKIAN, J.


*Venuti et al. v. Venuti et al.*
H044922