Filed 6/27/25  Smith v. Conetta CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM SMITH,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>JAMES J. CONETTA,<br>as Trustee, etc.,<br><br>　　　Defendant and Respondent. | B327183<br><br>Los Angeles County<br>Super. Ct. No.<br>18STPB07495 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah L. Christian, Judge.  Reversed and remanded.

Winget Spadafora & Schwartzberg, Timothy W. Fredricks and Richard P. Tricker for Petitioner and Appellant.

Santiago Law Group and Artemio M. Santiago for Objector and Respondent.

———————————

William Smith challenges the probate court's entry of summary judgment against him on his petition to determine the validity of amendments to an irrevocable trust to which he was a beneficiary. The court found Smith's petition was barred by the 120-day statute of limitations under Probate Code section 16061.8.[1] We reverse.

## BACKGROUND

The trust at issue here is an irrevocable life insurance trust created inter vivos in January 1990 by trustor/settlor Robert L. Townsend. He and the named trustee, George Hadlow, executed the Robert L. Townsend Irrevocable Life Insurance Trust (Trust) agreement, effective January 12, 1990. Townsend expressly established an irrevocable trust, "relinquish[ing] all right to alter, amend, revoke, or terminate this Trust Agreement." Townsend transferred cash to the Trust to enable the trustee to pay premiums on any policy held in the Trust insuring Townsend's life.[2] On Townsend's death, the trustee would receive the proceeds from any life insurance policy.

The Trust specified how and to whom the trustee was to distribute the Trust estate—including any life insurance proceeds—on Townsend's death. The primary beneficiary was Richard Genovese: he was to receive the entirety of the estate if its value was $1 million or less. If the estate was worth more than $1 million then Genovese was to receive $1 million and "[a]ny excess" was to be distributed, in different proportions, to several

---

[1]     Undesignated statutory references are to the Probate Code.

[2]     The Trust held one life insurance policy in the amount of $2,000,000, issued January 26, 1990.

2

named beneficiaries, including, among others, Smith and James J. Conetta—the named successor trustee.[3] If Genovese predeceased Townsend (which he did), the bequest to Genovese would instead be distributed equally between Smith and another beneficiary named Frank Sinatra (or whomever survived the other). If any named beneficiary (other than Genovese) died before distributions under the Trust could be made, the bequest to the deceased beneficiary would lapse to augment proportionately the bequests to the named beneficiaries (other than Genovese) still living at the time of distribution. The beneficiaries also had the right to withdraw contributions made to the Trust during the month of December in any year when contributions were made.

On May 19, 2003, after receiving legal advice from attorney Robert Hess, Townsend amended the Trust. The amendment states, "Although the . . . [T]rust provides that it cannot be amended, the Trustor, could cause the Trust to be terminated by ceasing to make future gifts which would cause the existing life insurance policy to lapse, which confirms that the existing beneficiaries have no vested interests." The Trust was amended "in exchange for Trustor's [Townsend's] agreement to make future gifts to keep the life insurance in force." The amendment changed the distribution of the Trust estate between the beneficiaries on Townsend's death so that Conetta now would receive the lesser of $425,000 or 21.25 percent of the estate.

---

[3] Smith and his then-wife jointly were to receive one-third of the excess, up to $100,000, and Conetta was to receive one-twelfth, up to $25,000.

The amounts the other beneficiaries were to receive also changed. The 2003 amendment appointed Conetta as trustee—whom the Trust already had named as successor trustee—and named new successor trustees. Townsend and Conetta signed the amendment as trustor and trustee, respectively.

On June 12, 2007, Townsend and Conetta signed a second amendment to the Trust. The purpose of the amendment was to divide the $2,000,000 life insurance policy held by the Trust among the remaining beneficiaries as follows: $100,000 or five percent to Smith, $100,000 or five percent to Smith's former wife (Patty Morejon), $120,000 or six percent to Frank Sinatra, and $560,000 or 28 percent each to Conetta, James Townsend, and John Townsend. If a beneficiary died, his or her interest still would lapse and be distributed among the surviving beneficiaries.

Townsend died ten and a half years later, on January 31, 2018. On March 22, 2018, Conetta—as trustee—sent Smith a letter notifying him of Townsend's death, that Townsend had formed a trust that was the beneficiary of a life insurance policy, and that Smith was one of the Trust's beneficiaries. Conetta enclosed a check for $200,000 representing Smith's share of what Townsend had left to him under the terms of the Trust.

By letter dated April 11, 2018—70 days after Townsend died—Conetta's then-attorney Paul Nash sent a "Statutory Notification Regarding the Robert L. Townsend Irrevocable Life Insurance Trust (California Probate Code §§ 16060 et seq.)" to the Trust's surviving beneficiaries: Smith, Morejon, Sinatra, and Conetta. The notification stated the Trust's creation date, January 12, 1990; that the original trustee Hadlow had resigned on February 1, 2000 and successor trustee Conetta had taken over duties as trustee; that on advice of attorney Robert Hess,

4

the Trust had been amended on May 19, 2003, and on June 12, 2007; and that Townsend had died on January 31, 2018. The notification gave Conetta's and Nash's contact information and informed the recipients they were "entitled upon reasonable request to the trustee, to receive from the trustee a true and complete copy of the terms of the trust." The notification included the following paragraph typed in all capital letters and boldface type:

> "You may not bring an action to contest the trust more than 120 days from the date this notification by the trustee is served upon you or 60 days from the date on which a copy of the terms of the trust is delivered to you during that 120-day period, whichever is later."

On August 10, 2018—121 days after Nash sent the above notification—Smith filed against Conetta, individually and as trustee of the Trust, and the two other Trust beneficiaries Morejon and Sinatra, a "verified petition to determine validity of amendments to irrevocable trust; for other relief for breach of trust; for an accounting; and for instructions." Smith alleged Townsend and Conetta executed the 2003 and 2007 amendments without first obtaining the consent of all the beneficiaries—including his consent—or a court order. Smith alleged he first "became formally aware" of the Trust amendments through the April 11, 2018 letter. On information and belief, Smith alleged the 2003 and 2007 amendments were invalid because they (1) were modifications of an irrevocable trust made without the consent of all the beneficiaries of the Trust; (2) were modifications of an irrevocable trust made without a petition to and order from the court allowing the modifications without

5

the consent of all the beneficiaries; (3) constituted a breach of the trustee's fiduciary duties and a breach of trust; and (4) were the result of the trustee's undue influence exerted over Townsend. Among other things, Smith asked the court to "rescind and nullify" the 2003 and 2007 amendments.

Conetta filed objections and a response to the petition in November 2018. He alleged the petition was barred by the 120-day statute of limitations set forth under section 16061.8. Conetta attached the April 2018 notification and a proof of service Nash signed on April 11, 2018, stating he served on that date a copy of the notification, as well as "a complete copy" of the Trust and 2003 and 2007 amendments, "on the interested parties in this action by placing a copy in a sealed envelope" addressed to each beneficiary. Nash declared, "I am 'readily familiar' with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the United States Postal Service with postage thereon fully prepaid at Irvine California, on the same day in the ordinary course of business."

On August 6, 2021, almost three years after Smith filed his petition, Conetta filed a motion for summary judgment, or in the alternative, summary adjudication of issues, based on the same statute of limitations argument. Smith opposed the motion. He argued section 16061.8 did not apply because the petition was not a direct contest of the Trust itself. Rather, Smith argued the petition sought to enforce the Trust—because the attempted amendments were not part of the Trust—and was "intended to ascertain the validity of the purported amendments and to order a complete accounting." Smith also argued that, even if section 16061.8 applied, his petition was timely because he did not

6

receive the complete terms of the Trust until July 2019—more than a year after Smith originally asked for a copy of the Trust terms—when Conetta sent two missing exhibits to the Trust. Smith argued the notice was insufficient in any event because Conetta never sent a notice that he had assumed the role of trustee, and the warning language was at the bottom of the second page without any indication that there was a second page to the notice. Smith also contended triable issues of fact existed and accused Conetta of bad faith.

In support of his opposition, Smith submitted a copy of the Trust, including Exhibits A (powers of the trustee) and B (general provisions of the Trust); a letter from Conetta to Sinatra, dated October 22, 2003, and letters from Conetta to Smith, dated October 21, 2004, October 15, 2013, and October 15, 2014, notifying the beneficiaries of their right to withdraw funds from the Trust between December 1 and 31 of the year of the letter; Conetta's March 22, 2018 letter informing Smith of Townsend's death; a May 8, 2018 email from Nash to Smith's attorney, stating he had mailed Smith a copy of the Trust "(sans Exhibit B, which I do not have)"; a May 18, 2018 letter from Nash to Smith's counsel enclosing "a complete copy" of the Trust and amendments; Smith's demand for the production and inspection of documents and Conetta's responses; and a July 24, 2019 email from Nash to Smith's counsel attaching Exhibits A and B to the Trust that he "discovered in files left by my client." Smith also filed objections to Conetta's evidence.

In reply, Conetta argued Smith's petition was a contest of the Trust; the notification satisfied the requirements of section 16061.7; the late-discovered Exhibit B to the Trust had no effect

7

on Smith's contest of the amendments;[4] and there were no triable issues of material fact.

On November 9, 2021, the court found it could not resolve evidentiary issues raised by Smith's objections to Conetta's evidence without supplementary declarations. The court continued the hearing to March 1, 2022.

On December 1, 2021, Conetta filed a declaration in response to Smith's objections to the evidence Conetta submitted in support of his motion. Conetta declared that in April 2003, Townsend sought legal advice about his ability to amend the Trust because the main beneficiary, Genovese, had died. Townsend discussed the issue with Conetta, and Conetta also received an April 28, 2003 letter from Hess to Townsend advising him about amending the Trust. He and Townsend executed amendments to the Trust on May 19, 2003, and June 12, 2007. Conetta attached copies of Hess's letter and the two amendments to his declaration.

Nash also filed a declaration in response to Smith's objections. Nash declared he served the statutory notification on Smith and all other beneficiaries on April 11, 2018. He prepared a proof of service at the time he served the notification. Nash declared that, at the same time he served the notification, he served "a complete copy" of the Trust, including Exhibit A and the two amendments, on Smith and all other beneficiaries. On May 8, 2018, Nash emailed Smith's counsel, telling him he

---

[4]     Nash declared he served a complete copy of the Trust, including Exhibit A and the amendments, with the April 11, 2018 notification. He found Exhibit B later and emailed it to Smith's counsel.

8

already had mailed a copy of the Trust, except for Exhibit B—"which [he] could not locate"—but he would be happy to mail him another copy. On May 18, 2018, Nash mailed "another complete copy" of the Trust and the two amendments to Smith's counsel.

On February 14, 2022, Smith filed a memorandum in opposition to Conetta's evidence. Smith again argued his petition was not time-barred because Conetta failed to give him "a full and complete copy of the terms of the Trust" until July 2019 when Conetta, through his counsel, sent both Exhibits A and B to the Trust to Smith's attorney. Smith argued he did not receive a complete copy of the Trust and both amendments in April 2018 —only the two-page letter. Smith rehashed other arguments from his opposition. He also objected to Conetta's and Nash's December 1, 2021 declarations, and his counsel filed a responsive declaration.

At the March 1, 2022 hearing, the court stated its tentative was to find the petition untimely. Smith's counsel argued there was a disputed issue of fact as to when Nash mailed the April 2018 statutory notification. Counsel argued Smith said he received the letter 11 days after it purportedly was mailed, but the letter would not have taken that long to arrive.[5] Counsel also argued an issue of fact existed as to whether Smith filed the petition within 60 days of Conetta, through Nash, having provided him with a complete copy of the Trust. Counsel also brought up Nash's prior disciplinary history.

---

[5]     Smith declared he received the two-page letter from Nash on April 20, 2018.

Finally, Smith's counsel argued the " 'attempted amendments' " did not follow the legal requirements to amend an irrevocable trust and thus had not had a legal effect on the Trust. Counsel argued that, if the amendments were void and invalid when created, they didn't "amend anything." Accordingly, there was a question of whether the statute "even applie[d]" because Smith was asking the court to "enforce the Trust."

Citing *Straley v. Gamble*,[6] the court found that, under case law, a challenge to the validity of an amendment still must be made within the 120-day statutory period. Smith's counsel argued the case law concerned a revocable trust, not an irrevocable trust.

Conetta's counsel argued there was no evidence to dispute Nash's sworn statements that he sent the statutory notification on April 11, 2018. Counsel argued the court was correct—Smith had to bring his petition to set aside the amendments within 120 days of service of the statutory notice.

The court found that, although Smith had a point about the amendments, "the fact is that the case law considers the amendments as part of the trust action. And so, therefore, it is

---

[6] *Straley v. Gamble* (2013) 217 Cal.App.4th 533. In *Straley*, the appellant filed a petition for an order to determine the validity of an amendment the settlor purportedly made to her living trust shortly before her death. (*Id.* at pp. 535–536.) The appellant filed, but did not serve, the petition within 120 days of the trustee's service, after the settlor's death, of a section 16061.7 notification. (*Id.* at p. 536.) The issue before the court was whether the petition had to be served within the 120-day limitations period to be timely. The court found it did not. (*Id.* at pp. 537–538.)

still controlled by the 120 days.  That's the court's ruling."  That same day the court issued a minute order granting the motion and ordering Conetta to prepare the order after hearing.  The court continued the hearing on a petition for an order approving the trustee's first accounting Conetta had filed in December 2019 to June 30, 2022 and again to September 8, 2022.

On December 9, 2022, the court issued its order after hearing and statement of decision granting Conetta's motion for summary judgment.[7]  The court found the petition to determine the validity of the amendments to the irrevocable Trust, and for an order distributing the Trust proceeds as laid out in the original Trust instrument, was barred by sections 16061.7 and 16061.8; the breach of fiduciary duty issues that did not relate to the accounting were subject to the 120-day statute of limitations, not the three-year statute of limitations; the accounting claim and any breach of fiduciary duty claim relating to it were not part of the motion for summary judgment; and Smith failed to present evidence demonstrating a triable issue of fact.

Smith moved for reconsideration on December 22, 2022. He presented evidence that Nash had been suspended in 2016 for misconduct that was " 'dishonest, intentional, or surrounded by, or followed by bad faith.' "  Counsel argued Nash's credibility thus remained a triable issue as to when he mailed the notification.  Conetta opposed the motion.

On February 8, 2023, Smith filed a notice of appeal from the summary judgment.  On May 23, 2023, the court placed

---

[7]     Smith filed objections to the proposed order after hearing and proposed statement of decision.

11

Smith's motion for reconsideration off-calendar as moot due to his pending appeal.

## DISCUSSION

**1.** *Applicable law and standard of review*

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review a grant of summary judgment de novo and independently decide whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)

On appeal, Smith primarily contends summary judgment was improper because section 16061.8 does not apply to a petition challenging the validity of amendments made to an irrevocable trust. The court thus erred in finding his petition—filed 121 days from the date of the statutory notification—was time barred. "The proper interpretation of a statute, and its application to undisputed facts, presents a question of law that is also subject to de novo review." (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142.)[8]

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning.

_____

[8] Smith also argues a triable issue of fact exists as to when Nash sent the statutory notification, precluding summary judgment. We need not resolve that issue to determine whether the Legislature intended section 16061.8 to apply under the circumstances here.

12

[Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' [Citation.] In other words, ' "we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" ' [Citation.] If the statutory terms are ambiguous, we may examine extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83.)

## 2. *Irrevocable vs. revocable trusts*

It is undisputed the Trust here was irrevocable on its creation in January 1990. "An irrevocable trust is one that may not or may no longer be amended or revoked." (13 Witkin, Summary of Cal. Law (11th ed. 2025) Trusts, § 2(4).) "Irrevocable trusts are binding, even on their trustors." (*Aguilar v. Aguilar* (2008) 168 Cal.App.4th 35, 37 (*Aguilar*).) Indeed, the written consent of the settlor and all beneficiaries, or a court order, is required to modify or terminate an irrevocable trust. (§ 15403, subd. (a) [if all beneficiaries consent, they may petition the court to modify or terminate an irrevocable trust]; § 15404, subds. (a) [court approval not required if settlor and all beneficiaries consent], (b) [if any beneficiary does not consent, court may modify trust on petition by other beneficiaries, with consent of settlor]; see also *Aguilar*, at p. 40.) On Townsend's creation of the Trust, therefore, Smith, as a named beneficiary, "acquire[d] a vested and present beneficial interest in the trust property," and his interests were "not subject to divestment as with a revocable trust." (*Empire Properties v. County of*

13

*Los Angeles* (1996) 44 Cal.App.4th 781, 787 (*Empire Properties*); see *ibid.* ["nature of a beneficiary's interest differs materially depending on whether the trust is revocable or irrevocable"].)

By contrast, " '[r]evocable trusts . . . can be amended without approval from the beneficiaries.' " (*Babbitt v. Superior Court* (2016) 246 Cal.App.4th 1135, 1146 (*Babbitt*); §§ 15401, 15402.) Accordingly, a beneficiary's interest in the property of a revocable trust is " ' "merely potential" and can "evaporate in a moment at the whim of the [settlor]." ' " (*Estate of Giraldin* (2012) 55 Cal.4th 1058, 1065–1066.) In other words, a beneficiary of a revocable trust has no pecuniary interest in the revocable trust until it becomes irrevocable, e.g., on the settlor's death. (*Babbitt,* at pp. 1147–1148.)

Unlike the beneficiary of an irrevocable trust, therefore, a beneficiary of a revocable trust has no right to petition the court concerning the internal affairs of the trust under section 17200 until the trust becomes irrevocable, usually on the settlor's death. (*Estate of Giraldin, supra,* 55 Cal.4th at p. 1076; see *Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 291 (*Bridgeman*) [probate court dismissed without prejudice petition to determine validity of amendment to revocable trust filed before settlor died finding petitioner had no "standing to petition the court regarding the internal affairs of the Trust while the Trust remained revocable"]; see also § 15800, subd. (a)(1) ["during the time that a trust is revocable and at least one person holding the power to revoke the trust . . . is competent . . . : [t]he person holding the power to revoke, and not the beneficiary, has the rights afforded beneficiaries under this division"]; Cal. Law Revision Com. com., West's Ann. Prob. Code (2023) foll. § 15800 [explaining "section has the effect of postponing the enjoyment

14

of rights of beneficiaries of revocable trusts until the death or incompetence of the settlor . . .”]; § 17200, subd. (a) [“Except as provided in Section 15800, a trustee or beneficiary of a trust may petition the court under this chapter concerning the internal affairs of the trust or to determine the existence of the trust.”].)

Indeed, while a trust is revocable, a beneficiary has no right to receive even the terms of the trust. (§ 16069, subd. (a)(1); *Babbitt, supra*, 246 Cal.App.4th at p. 1146 [because settlor can amend a revocable trust without beneficiaries’ approval, “ ‘the contents of revocable trusts should remain secret from beneficiaries so as to ensure the settlor’s intent is fully realized, without undue pressure from potential beneficiaries,’ ” quoting from legislative history of § 16069].)

### 3.    *The relevant Probate Code sections*

A trustee has a general duty to keep beneficiaries of a trust reasonably informed of the trust and its administration. (§ 16060.) On the reasonable request of a beneficiary, the trustee must provide the terms of the trust and information relating to the administration of the trust relevant to the beneficiary. (§§ 16060.7, 16061, 16061.5.) However, a trustee is not required to provide information, or the terms of a trust, to a beneficiary of a revocable trust during the period when the trust may be revoked. (§ 16069, subd. (a)(1).)

Section 16061.7 also requires a trustee to serve a notification, with prescribed information, on trust beneficiaries or heirs in the following circumstances: (1) when a revocable trust, or any portion of it, becomes irrevocable due to a settlor’s

15

death;[9] (2) whenever there is a change of trustee of an irrevocable trust; and (3) whenever a power of appointment retained by a settlor becomes effective or lapses on the death of the settlor "with respect to an inter vivos trust which was, or was purported to be, irrevocable upon its creation." (§16061.7, subds. (a)(1)–(3), (b).) The trustee must serve the notification within 60 days of the triggering event. (*Id.*, subd. (f).) Among other things, the notification must identify the settlor and the date the trust was executed, include the name and contact information for the trustee, and notify the recipient he or she is entitled to a copy of the terms of the trust on request. (*Id.*, subd. (g)(1), (2), (5).)

If the trustee serves the notification because a revocable trust, or portion of it, has become irrevocable due to the death of a settlor, the notification "shall also include a warning, set out in a separate paragraph in not less than 10-point boldface type," that states:

> " 'You may not bring an action to contest the trust more than 120 days from the date this notification by the trustee is served upon you or 60 days from the date on which a copy of the terms of the trust is delivered to you during that 120-day period, whichever is later.' " (§ 16061.7, subd. (h), eff. Jan. 1, 2018.)

---

[9] Specifically, the notification is required when the revocable trust becomes irrevocable "because of the death of one or more of the settlors of the trust, or because, by the express terms of the trust, the trust becomes irrevocable within one year of the death of a settlor because of a contingency related to the death of one or more of the settlors of the trust." (§ 16061.7, subd. (a)(1).)

16

Section 16061.8, in turn, is the statute implementing that 120-day limitations period.[10]

The version of section 16061.8 in effect in 2018 provided: "No person upon whom the notification by the trustee is served pursuant to this chapter [comprising §§ 16000 to 16110], whether the notice is served on him or her within or after the time period set forth in subdivision (f) of Section 16061.7, may bring an action to contest the trust more than 120 days from the date the notification by the trustee is served upon him or her, or 60 days from the date on which a copy of the terms of the trust is delivered pursuant to Section 1215 to him or her during that 120-day period, whichever is later." (Former § 16061.8, Stats. 2017, ch. 319, § 88, eff. Jan. 1, 2018.)

### 4. *Sections 16061.7 and 16061.8 did not apply*

In essence, the trial court found section 16061.8 applied here because—70 days after Townsend's death—Conetta (through Nash) served a notification on Smith and the other Trust beneficiaries containing the information required by section 16061.7, subdivisions (g) and (h). Yet, because the Trust was irrevocable on its creation—rather than made irrevocable due to the settlor's death—Townsend's death did not trigger Conetta's duty to send a § 16061.7 notification. The only event that could have triggered the trustee's duty to serve the section

---

[10] Sections 16061.7 and 16061.8 were added to the Probate Code in 1997 through the same bill (Assem. Bill No. 1172 (1997–1998 Reg. Sess.)). (§ 16061.7, added by Stats. 1997, ch. 724, § 23; § 16061.8, added by Stats. 1997, ch. 724, § 24.)

17

16061.7 notification was a change of trustee.[11]  No change of trustee occurred on Townsend's death, however.  Rather, the trustee had changed *18 years before* Townsend died, when Conetta as successor trustee took over the trustee's duties on Hadlow's resignation.  No reasonable person, therefore, could construe the April 11, 2018 notification as having been sent *because* there had been a change of trustee.  Accordingly, as section 16061.7 did not require Conetta to serve the prescribed notification, section 16061.8 also did not apply.

Conetta argues former section 16061.8 "does not apply only to those notices 'required' by [s]ection 16061.7, but to any 'notification by the trustee . . . served pursuant to this chapter.' " (Former § 16061.8.)  The only "notification" referenced in the chapter in which section 16061.8 is found is the notification required by section 16061.7.  Moreover, "pursuant to" means "[i]n compliance with; in accordance with" (Black's Law Dict. (12th ed. 2024)) or "according to" (Merriam-Webster Unabridged Dict. (2025) <https://unabridged.merriam-webster.com/unabridged/pursuant%20to> [as of June 26, 2025], archived at <https://perma.cc/ZY4K-QDGJ>).  Although the "statutory notification" here contained the information and warning set forth in section 16061.7, subdivisions (g) and (h), because Townsend's death was neither an event triggering Conetta's duty to serve the notification—nor an event requiring the warning language about the limitations period—we cannot conclude Conetta served the notification "pursuant to this chapter."

---

[11]    The third triggering event under section 16061.7, subdivision (a)(3) is not relevant here.

18

To read former section 16061.8 otherwise would enable trustees to trigger the 120-day limitations period on their mere whim simply by sending a notice containing the information set forth in section 16061.7.

It bears noting the parties' and the court's focus was on whether Conetta's petition challenging the validity of the purported amendments to the Trust was a trust contest triggering application of section 16061.8, not on whether Conetta sent the notification "pursuant to" section 16061.7. Although the trial court acknowledged different procedures exist for a settlor to amend an irrevocable versus a revocable trust, the court did not consider that a beneficiary's interest is materially different as between these two types of trusts. (*Empire Properties, supra*, 44 Cal.App.4th at p. 787.) The court thus did not consider the different import the death of a settlor of a revocable trust has on the trust beneficiary's interest in and right to contest the trust. (See, e.g., *Babbitt, supra*, 246 Cal.App.4th at pp. 1146–1148; *Bridgeman, supra*, 219 Cal.App.4th at p. 291.)[12] In contrast to a beneficiary of a revocable trust—whose ability to contest a trust is not triggered

___

[12] Indeed, the Legislature added section 16061.7 to the Probate Code to ensure beneficiaries and heirs would receive prompt notification of the existence of trust assets and terms. (See, e.g., Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1172 (1997–1998 Reg. Sess.) as amended July 15, 1997, p. 4 ["It is . . . increasingly common for persons to use revocable trusts as will substitutes. In these cases, the sponsor [of the bill] believes that prompt notification of the heirs of a deceased settlor will reduce the incidence of trustees concealing trust assets and even the existence of trusts."].)

until the death of the settlor—had Smith learned Townsend amended the Trust in 2003 and 2007, he could have filed a section 17200 petition to determine the amendments' validity while Townsend still was alive. In that case, section 16061.8 would not have applied because no notification under section 16061.7 would have been implicated. We see no reason why Smith's discovery of the amendments after Townsend's death should trigger the 120-day limitations period simply because the trustee said it did in a notification not required by the statute.

Conetta notes section 16061.8 applies even if "the notice is served . . . after the time period set forth in subdivision (f) of Section 16061.7." (§ 16061.8; former § 16061.8.) Even if Conetta sent (through Nash) the April 11, 2018 notification to comply—very belatedly—with his duty under section 16061.7, subdivision (a)(2), we conclude the statute did not impose a 120-day limitations period in these circumstances.

5.    ***The Legislature did not intend section 16061.8 to apply to irrevocable trusts***

Although the plain language of former section 16061.8 states it applies to "person[s] upon whom the notification by the trustee is served," when read together with section 16061.7, an ambiguity appears. As discussed, section 16061.7, subdivision (h) requires, as it did in 2018, the trustee's notification to warn the recipient about the 120-day limitations period *only* when the notification is sent because a revocable trust has become irrevocable due to the death of a settlor. As section 16061.7 clearly did not require the trustee to include the warning if the trustee sent the notification for other reasons—as was the case here—reasonably, the Legislature did not intend for the

20

120-day limitations period implemented by section 16061.8 to apply other than when a warning about the truncated limitations period also was required. Otherwise, a trustee properly could send a notification without warning the recipient about the 120-day limitations period when the trustee of an irrevocable trust changed (which could occur during the settlor's lifetime), and the recipient nevertheless would be barred from contesting the Trust for unrelated reasons—for example if the settlor purported to strike the recipient as a beneficiary of the irrevocable trust—more than 120 days after service of that notification, despite having received no notice of the 120-day period to raise the challenge.

Given this seeming contradiction between section 16061.7, subdivision (h) and former section 16061.8, we may consider extrinsic sources, including the legislative history of these statutes, to determine the Legislature's intent. That legislative history supports our conclusion that the Legislature intended section 16061.8 to apply to notifications served only in the circumstance requiring the warning language under section 16061.7, subdivision (h)—that is, a notification sent because a revocable trust has become irrevocable due to the settlor's death.

When the Legislature first enacted section 16061.7 in 1997, it included only two triggering events—when a revocable trust became irrevocable due to the death of a settlor and when the trustee of an irrevocable trust changed.[13] That initial statute also required a trustee's notification sent because of either

---

[13]    The third triggering event, subdivision (a)(3), was added in 2010. (See Stats. 2010, ch. 621, § 5.)

21

triggering event to warn the recipient of the 120-day limitations period.  (See former § 16061.7, subds. (a), (e)(6), added by Stats. 1997, ch. 724, § 23.)[14]  The Legislature immediately amended section 16061.7 in 1998, however, to exempt a notification served "only because of a change of the trustee" from having to include the warning about the 120-day limitations period.  (Former § 16061.7, subd. (g), as amended by Stats. 1998, ch. 682, § 10 ["Unless the notification by trustee is served only because of a change of the trustee, the notification by trustee shall also include a warning . . . ."].)  The bill that introduced this amendment did not propose any amendments to section 16061.8, however.  (See Assem. Bill No. 2069 (Reg. Sess. 1997–1998).)

In 2000, the Legislature again amended the subdivision prescribing the warning about the 120-day period to read as it does today—requiring the notification to include the warning language only when the trustee is required to serve it *because* a revocable trust has become irrevocable due to the death of a settlor.[15]  (Stats. 2000, ch. 592 § 1; § 16061.7, subd. (h).)  Although the Legislature also made amendments to section

---

[14]  Assembly Bill No. 1172, as introduced on February 28, 1997, did not include section 16061.8.  (See Assem. Bill No. 1172 (1997–1998 Reg. Sess.) § 33.)  The bill was amended to add that section imposing the 120-day limitations period and to add the corresponding subdivision to section 16061.7 requiring the warning about the time limit.  (Sen. Amend. to Assem. Bill No. 1172 (1997–1998 Reg. Sess.) Aug. 6, 1997 at §§ 22, 23.)

[15]  Amendments made to section 16061.7 in 2010 and 2017 did not change the text of subdivision (h).  (See Stats 2010, ch. 621, § 5; Stats. 2017, ch. 319, § 87, eff. Jan. 1, 2018.)

16061.8 in 2000, 2010, and 2017, effective January 1, 2018, the Legislature did not amend the language to reflect the changes it had made to the warning requirement in section 16061.7. (See Stats. 2000, ch. 592, § 2; Stats. 2010, ch. 621, § 6; Stats. 2017, ch. 319, § 88, eff. Jan. 1, 2018.)

As Smith notes, in 2022 the Legislature finally amended section 16061.8, effective January 1, 2023, expressly to state it applied only where a revocable trust had become irrevocable due to the settlor's death. (See Stats. 2022, ch. 30, § 1.) Section 16061.8 now reads:

> "A person upon whom the notification by the trustee is served pursuant to paragraph (1) of subdivision (a) of Section 16061.7, whether the notice is served on the person within or after the time period set forth in subdivision (f) of Section 16061.7, shall not bring an action to contest the trust more than 120 days from the date the notification by the trustee is served upon the person, or 60 days from the date on which a copy of the terms of the trust is delivered pursuant to Section 1215 to the person during that 120-day period, whichever is later."

Accordingly, section 16061.8 now tracks section 16061.7, subdivision (h)'s requirement that a warning about the 120-day period be included only when the trustee sends a notification because of the death of a settlor, as described in section 16061.7, subdivision (a)(1).

Relying on *Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572 (*Ailanto*), Smith argues the

23

legislative history of the 2022 amendment demonstrates the Legislature did not intend for former section 16061.8 to apply in circumstances other than where a revocable trust becomes irrevocable. (*Id.* at pp. 579, 589–590 [relying on legislative history of later amendment to a statute that reflected the Legislature's understanding of the then-existing law that the court was interpreting].) Conetta argues Smith impermissibly is attempting to apply the 2022 amendment retroactively to section 16061.8, which was not in effect in April 2018.

We agree with Smith. The legislative history demonstrates the Legislature amended section 16061.8 in 2022 to clarify it intended the 120-day period to apply only when the trustee notification is sent because a revocable trust has become irrevocable due to the death of a settlor, as already was reflected in section 16061.7, subdivision (h). (*Ailanto, supra*, 142 Cal.App.4th at p. 589, fn. 13 ["We may properly rely on the legislative history of subsequent enactments to clarify the Legislature's intent regarding an earlier enacted statute. 'Although a legislative expression of the intent of an earlier act is not binding upon the courts in their construction of the prior act, that expression may properly be considered together with other factors in arriving at the true legislative intent existing when the prior act was passed.' "].)

First, as Smith notes, the author of the 2022 bill (Assem. Bill No. 1745) that amended section 16061.8 stated: "This legislative proposal would *clarify* Section 16061.8 to provide that the 120-day limitation period applies only when the notification is required by reason of the death of the settlor. A new limitation period would not be created or revived if notification is required upon the change of trustee of an existing irrevocable trust,

24

as the trust has already been deemed just that—'irrevocable.' The proposed change would *clarify an ambiguity in current law* and further the existing statutory purpose of providing finality in post-death trust administration." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1745 (2021–2022 Reg. Sess.) as amended Jan. 31, 2022, p. 3, italics added (Sen. Com. Analysis).)[16]

The sponsor of the bill, the Trusts & Estates Section of the California Lawyers Association, specifically noted Assembly Bill No. 1745's "clarification"—that the 120-day limitation period applies only when the trustee's notification "is required by reason of the death of a settlor"—"is consistent with the language in Probate Code Section 16061.7(h). Under Section 16061.7(h) the trustee notification must include a statutory warning about the 120-day period to contest the trust, *but only when the notification is required by reason of the death of a settlor.*" (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1745 (2021–2022 Reg. Sess.) as introduced Jan. 31, 2022, p. 5, italics added (Assem. Com. Analysis).)

The analysis by the Assembly Committee on the Judiciary of Assembly Bill No. 1745, as introduced on January 31, 2022, explained why that limitation in the existing law made sense:

---

[16] Smith asked us to take judicial notice of the analysis by the Senate Judiciary Committee. Although Conetta argues the legislative history of the 2022 amendment is not relevant, he did not oppose Smith's request for judicial notice. We now grant Smith's request and take judicial notice of that legislative history.

"The notice of limitation on bringing an action is not sent in the event of one of the other triggering events for notice:  either a change of trustees of an irrevocable trust or a power of appointment becomes effective or lapses. That is appropriate *because those events do not trigger the need to challenge the trust. However[,] a trust becoming irrevocable does.* A time limitation for bringing suit in that instance promotes the efficient administration of a trust after the death of a settlor or other event making the trust irrevocable, and all interested parties are alerted to the short limitation period available to contest the validity of the trust instrument. . . .  The notification, statutory warning, and limitation period help bring potential contests to a head and settle them with finality."  (Assem. Com. Analysis, *supra*, at p. 4, italics added.)

The analysis further notes the provision limiting when an individual can bring an action to challenge a trust, stated in former section 16016.8, "is broader than those instances where the trustee is required to send the warning under Section 16016.7."  (*Ibid.*)

The legislative history thus indicates the Legislature amended section 16061.8 so it would align with existing section 16016.7, subdivision (h).  (See Cal. Lawyers Assn. Section on Trusts and Estates, Legislation Alert: AB 1745 (Feb. 9, 2023) <https://calawyers.org/trusts-and-estates/legislation-alert-ab-1745/> [as of June 25, 2025], archived at <https://perma.cc/GDD4-

26

CM67> [explaining the amended statute ensured section 16061.8 was consistent with the already-existing section 16061.7, subdivision (h)].)  By doing so the Legislature also ensured, as expressed in the legislative history, beneficiaries of a *revocable* trust—who already had received notification that the trust had become irrevocable and had the opportunity to contest the trust during the 120-day period—would not have another chance (or "multiple" chances) to contest the trust during a new 120-day period, for example, if—perhaps years later—they received notice the trustee of the now-irrevocable trust had changed.  (Assem. Com. Analysis, *supra*, at pp. 3–5.)  As the author of Assembly Bill No. 1745 noted, in such a situation, "the underlying provisions of the trust do not change, *as is the case when a revocable trust becomes irrevocable.*"  (Sen. Com. Analysis, *supra*, at p. 4, italics added.)

In essence, therefore, by amending section 16061.8, the Legislature corrected the ambiguity it had created when it amended section 16061.7 in 1998 and 2000 to require the warning about the 120-day limitations period only in situations where a revocable trust had become irrevocable due to the settlor's death (or the trust terms) but failed to specify that same limitation in section 16061.8.

Moreover, the Legislature made clear it understood the key difference between a beneficiary's interest in the property of an irrevocable trust as opposed to a revocable trust, bolstering our conclusion it did not intend section 16061.8 to apply to a notification sent in connection with an already irrevocable trust. The executive summary of the Senate Judiciary Committee's analysis of Assembly Bill No. 1745 explained:

27

"A revocable trust may be revoked or changed without the consent of the beneficiaries or a court, whereas an irrevocable trust prohibits the settlor from revoking or changing the trust without the consent of the beneficiaries of the trust or the court.  Revocable trusts become irrevocable when the settlor dies, or when the trust instrument itself states when it is to become irrevocable.  Existing law requires the trustee of a trust to notify the beneficiaries and heirs of the deceased settlor of the existence of the trust when specified events occur. . . .  This bill would limit the instances when beneficiaries can bring an action to contest a trust within the specified time period to only when beneficiaries have received notice that a revocable trust, or any portion thereof, has become irrevocable because of the death of one or more settlors or by the express terms of the trust, as specified." (Sen. Com. Analysis, *supra*, at p. 1.)

The Legislature thus understood the death of a settlor of an irrevocable trust would not trigger an opportunity or a necessity for a beneficiary to contest the trust—and thus the need for the 120-day limitations period—as the settlor's death would if the trust were revocable.  In other words, because the beneficiary of an irrevocable trust has a vested interest in the trust's property, as we have discussed, the beneficiary need not wait for the death of the settlor—as the beneficiary of a revocable trust would— to be able to contest a settlor's actions, for example, if the settlor

28

transferred assets out of the irrevocable trust. (See, e.g., *Aguilar, supra*, 168 Cal.App.4th at pp. 37, 40 [beneficiary of trust made irrevocable years earlier on co-settlor's death successfully challenged remaining settlor's transfer of assets from that irrevocable trust]; *Bridgeman, supra*, 219 Cal.App.4th at pp. 290–291, 294–295 [appellant—whom the probate court earlier found could not challenge settlor's amendment removing him as the beneficiary from a revocable trust while the trust remained revocable—filed a new petition after the settlor died more than 120 days after service of a section 16061.7 notification, which was untimely because Code of Civil Procedure section 1013 did not extend the time under section 16061.8 to respond for out-of-state service by mail].)

Based on the legislative history of sections 16061.7 and 16061.8, we only can conclude the Legislature's earlier failure to amend section 16061.8 to be consistent with section 16061.7, subdivision (h), was an oversight.

In sum, we conclude section 16061.8 did not apply here because Conetta had no duty to serve a section 16061.7 notification, and the Legislature intended section 16061.8 to apply only when a revocable trust has become irrevocable due to a settlor's death. Accordingly, we need not determine whether the petition was a trust contest or address Smith's other contentions on appeal.

## DISPOSITION

We reverse the judgment and remand the matter for further proceedings.  William Smith is to recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.



ADAMS, J.