[No. G040230. Fourth Dist., Div. Three. Nov. 6, 2008.]

JAMES AGUILAR, Plaintiff and Appellant, v.
MANUELA S. AGUILAR, as Trustee, etc., Defendant and Respondent.

## Counsel

Aarons & Aarons and Julius Aarons for Plaintiff and Appellant.

Robert J. McDonnell for Defendant and Respondent.

## Opinion

**MOORE, J.**—In a case of buyer's remorse, a wife entered into a joint estate plan with her husband—more particularly, an inter vivos trust that became irrevocable in its entirety on the death of the first spouse to die. More than nine years after the husband died, the wife purported to withdraw her share of the community property from the trust. While the record is not perfectly clear on the point, it would appear that the wife had a different testamentary disposition in mind than the one set forth in the trust.

However, one of the remainder beneficiaries of the trust objected to the dilution of his eventual share and filed a petition to undo the withdrawal of trust property. The court denied the petition and the remainder beneficiary appeals. We reverse and remand. Even though the property the wife sought to withdraw was her share of the community property, it was too late for her to withdraw it. Irrevocable trusts are binding, even on their trustors. As the life beneficiary, the wife may continue to enjoy the property as held by the trust.

I

## FACTS

Joe Aguilar (Joe) and Manuela S. Aguilar (Manuela),[1] husband and wife, executed several estate planning documents on November 10, 1992—an inter vivos trust, a property agreement, and pour-over wills. They, as trustors, created the Aguilar Living Trust dated November 10, 1992 (the joint trust). In the joint trust, they declared that their principal residence, located in the City of Lompoc, California (the Lompoc property), which they were transferring into the joint trust, was their community property. Joe and Manuela further

---

[1] "Hereafter, we refer to the parties by their first names, as a convenience to the reader. We do not intend this informality to reflect a lack of respect. [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2 [47 Cal.Rptr.3d 183].)

declared that the Lompoc property, as an asset of the joint trust, was to retain its community property character. On that topic, they also stated, in the property agreement: "We agree that all property, regardless of how title is held, is confirmed to be our community property." In their wills, Joe and Manuela left all of their property to the trustee of the joint trust.

Joe died in February 1994. In June 1995, Manuela made a new will. In that will, she left all of her property to her one child—Oscar Sosa.

In August 2003, Manuela, as trustee of the joint trust, executed a deed (the deed) purporting to convey one-half of the Lompoc property to herself as trustee of the Manuela Sosa Aguilar Living Trust (the individual trust).[2] The deed was recorded in September 2003.

This did not sit well with James Aguilar (James), Joe's son and a remainder beneficiary under the joint trust. In November 2006, he filed a petition to declare the joint trust irrevocable, to cancel the deed, to quiet title to the Lompoc property in the joint trust, and to obtain damages from Manuela individually and as trustee of the individual trust. In opposition to the petition, Manuela responded that the joint trust and the property agreement made clear that the Lompoc property was community property, so her withdrawal, from the joint trust, of her one-half interest in the Lompoc property was consistent with the joint trust and the property agreement. She also represented that the Lompoc property was the only asset of the joint trust at the time of her withdrawal of the one-half interest.

The court found that the provisions of the joint trust confirmed that the property in question was community property. It also found that Manuela did not violate either the law or the terms of the joint trust by withdrawing her one-half interest in that community property and transferring it to the individual trust. The court then denied James's petition. James appeals.

II

DISCUSSION

A. *Introduction*

The arguments are simple. James contends that the joint trust was irrevocable following Joe's death and precluded Manuela from withdrawing any

---

[2] The record does not contain a copy of the individual trust, to which Manuela transferred the one-half interest in the Lompoc property.

property therefrom, even her community property share of the joint trust assets. Manuela argues that she was at liberty to withdraw her share of the community property from the joint trust, irrespective of whether the joint trust was irrevocable.

In addressing these arguments, we bear the following rules in mind: " '[T]he primary rule in construction of trusts is that the court must, if possible, ascertain and effectuate the intention of the trustor or settlor.' [Citation.] 'The intention of the transferor as expressed in the [trust] instrument controls the legal effect of the dispositions made in the instrument.' [Citations.] 'The nature and extent of the rights retained by the trustor are to [be] measured by the four corners of the instrument.' [Citation.]" (*Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1206 [116 Cal.Rptr.2d 319].) We turn then to the provisions of the joint trust.

B. *Joint Trust Provisions*

Paragraphs 2.01 and 3.01 of the joint trust stated that the joint trust could be amended or revoked during the joint lifetimes of Joe and Manuela. After their joint lifetimes, however, the surviving spouse had no power to amend or revoke the joint trust.

Paragraph 3.03 of the joint trust provided that when the first of the trustors died, the trust became "irrevocable and not subject to amendment, revocation, or termination . . . ." Paragraph 4.02, subparagraph B.2 made clear that, after that first death, the trustee had no power to "pay to or apply for the benefit of the surviving trustor any sums out of the principal of the trust estate." When Manuela purported to withdraw a one-half interest in the Lompoc property from the joint trust, she did, in essence, endeavor to apply that property to her own benefit, in contravention of the terms of the then irrevocable joint trust. In other words, Manuela breached the terms of the joint trust by executing a deed purporting to withdraw property from the trust after Joe's death, even though the property in question was her share of the community property. Inasmuch as the terms of the joint trust were unambiguous, and the joint trust had become irrevocable before Manuela executed the deed, the Lompoc property remains the property of the joint trust, and is not the property of Manuela. (*Laycock v. Hammer* (2006) 141 Cal.App.4th 25, 32 [44 Cal.Rptr.3d 921].) After Joe's death, the joint trust permitted Manuela to continue to enjoy the Lompoc property only as a trust asset.

The purpose of this arrangement was clear. Paragraph 4.03 of the joint trust required that, upon the surviving trustor's death, the trust estate be divided in equal shares for, and distributed free of trust to, the trustors' eight children and stepchildren, or their issue, by right of representation. The record discloses that seven of the identified remainder beneficiaries are Joe's children and one is Manuela's. The joint trust also provided, in paragraph 5.01 thereof, that after the first of the trustors died, "the trustee [had] no power to sell any real property held in the trust estate without the prior written consent of all the trustors' children and stepchildren . . . ." Obviously, the intention of the trustors, Joe and Manuela, at the time they created the joint trust, was to make certain that the principal of the joint trust would be distributed in equal shares to the eight children and stepchildren after the death of the second trustor to die.

■       Having made the joint trust irrevocable, Manuela was not at liberty to change that planned distribution after Joe's death. (*Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 291–292 [21 Cal.Rptr.3d 239] [attempts to transfer assets from irrevocable trust to different trusts constituted conversion]; *Walton v. Bank of California* (1963) 218 Cal.App.2d 527 [32 Cal.Rptr. 856] [trustor may not rescind irrevocable trust].) Any change at that point would have required the consent of the other beneficiaries of the joint trust. (Prob. Code, § 15403, subd. (a); *Laycock v. Hammer, supra,* 141 Cal.App.4th at p. 30.) This Manuela did not have.

C.  *Additional Evidence of Intent*

■       Because the terms of the joint trust were perfectly clear, we have no need to look at any extrinsic evidence in order to ascertain the intent of Joe and Manuela as trustors. However, we nonetheless note that the record contains crystalline evidence outside of the joint trust instrument itself memorializing that intent. (See *Gardenhire v. Superior Court* (2005) 127 Cal.App.4th 882, 888 [26 Cal.Rptr.3d 143] [extrinsic evidence admissible to interpret trust instrument]; *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1440 [100 Cal.Rptr.2d 501] [court may consider circumstances under which trust was created].)

The attorney who prepared the joint trust had some concern over the fact that it became irrevocable on the first death. He wrote a clear and cogent letter to Joe and Manuela emphasizing the irrevocability.

The attorney stated: "[A]s I have explained to you the trust becomes totally IRREVOCABLE once one of you dies. This means that the survivor <u>may not</u> amend, modify or terminate the trust. The assets held by the trust must pass to the beneficiaries of the trust, who are your children and stepchildren. Also, the survivor has no power to invade or spend the principal held in the trust. If the only asset held [in] the trust is your home then the survivor may [live] in the home but may not remove the home or any proceeds from the sale of the home for any reason. It must remain in the trust for the children and stepchildren upon the survivor's death." The attorney continued: "I explained to you that it is unusual to draft a living trust that becomes totally irrevocable upon the first [spouse's] death, however, after having discussed this you still desire to proceed in this manner." He asked Joe and Manuela to review the letter and make sure it correctly stated their understanding of the joint trust he had prepared.

Joe and Manuela then signed the letter to demonstrate their understanding and their agreement to the terms set forth in the letter and in the joint trust. They placed their signatures immediately below the following language: "We have read this letter and it correctly sets forth our understanding as to the reasons we are signing the trust discussed in the letter. We understand that the trust is IRREVOCABLE as soon as one of us dies. This means the survivor may not amend[,] modify or terminate the trust. *We also understand that the survivor may not withdraw principal from the trust.*" (Italics added.)

Manuela makes no contention that she did not understand the letter she signed, or that she did not understand the provisions of the joint trust. It would simply appear that, some years after Joe's death, she had a change of heart in terms of her desired estate plan with respect to the principal of the joint trust. Unfortunately, it was too late for her to effectuate a change. She had already entered into an irrevocable estate plan with Joe.

D. *Attorney Fees*

James requests attorney fees in connection with this matter. He states that, but for Manuela's violation of the terms of the joint trust and breach of her fiduciary duty to the remainder beneficiaries, he would not have had to incur attorney fees to protect his rights as a remainder beneficiary. However, James cites no legal authority in support of his request for attorney fees. Consequently, we do not address his request. (*Akins v. State of California* (1998) 61 Cal.App.4th 1, 17, fn. 9 [71 Cal.Rptr.2d 314].) However, James is not precluded from making a request for attorney fees, supported by proper authority, on remand.

## III

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with instructions to enter appropriate relief consistent with this opinion. James shall recover his costs on appeal.

O'Leary, Acting P. J., and Ikola, J., concurred.

A petition for a rehearing was denied December 1, 2008, and respondent's petition for review by the Supreme Court was denied January 14, 2009, S168896. George, C. J., did not participate therein.