Filed 10/6/25  Graham v. Curry CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| STEPHANIE GRAHAM et al., | C100930 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2020-00290114) |
| v. | |
| CRYSTAL MARIA CURRY, | |
| Defendant and Respondent. | |

James E. Vendley (James)[1] and Dorothy L. Vendley (Dorothy), a married couple, established the James E. Vendley Family Revocable 1975 Trust (the 1975 Trust).  Under the terms of one amendment, the trust would divide into specified subtrusts upon the death of the first spouse—Trust A (a revocable trust), and Trusts B and C (irrevocable trusts).  Each subtrust had a distinct purpose and beneficiary structure.

James died in 1993, triggering the subtrust provision.  In 1998, Dorothy, as surviving settlor and trustee, executed a quitclaim deed conveying real property on Tyler

---

[1] Given the shared surname, we will refer to this individual and his wife by their first names and mean no disrespect.

1

Foote Crossing Road in Nevada City (the Tyler Foote property) from the 1975 Trust to Trust C. In 2004, as part of a wider property swap between the subtrusts, she executed a quitclaim deed purporting to convey the Tyler Foote property from Trust C to Trust A. Dorothy died in 2018.

Plaintiffs Stephanie Graham and Kristen Graham, two of the settlors' grandchildren and beneficiaries under all three subtrusts, filed a petition under Probate Code section 850 for an order determining title to the Tyler Foote property. Defendant Crystal Curry, another grandchild and a beneficiary under Trust B and Trust C, but disinherited from Trust A, filed a cross-petition seeking to invalidate the 2004 Tyler Foote property transfer and to confirm that property as an asset of Trust C. Both sides moved for summary judgment. Citing the irrevocable nature of Trust C, the trial court denied plaintiffs' motion, granted defendant's motion, and granted defendant's cross-petition for an order confirming that the Tyler Foote property was an asset of Trust C and cancelling the 2004 quitclaim deed.

On appeal, plaintiffs argue the trial court erred because: (1) defendant's cross-petition was time-barred under Code of Civil Procedure[2] section 366.2, and (2) Dorothy's 2004 conveyance of the Tyler Foote property from Trust C to Trust A was effective and the Tyler Foote property was an asset of Trust A, not Trust C.

We will reverse. We agree with defendant that her cross-petition was not time-barred by section 366.2. We further conclude, however, that defendant failed to establish, as a legal matter, that the conveyance of the Tyler Foote property from Trust C to Trust A was invalid based on the irrevocable character of Trust C. We also conclude that defendant failed to eliminate all triable issues of material fact as to whether the exchange

---

[2] Undesignated section references are to the Code of Civil Procedure.

of the four properties among the subtrusts changed the total value of defendant's trust estate in violation of the express terms of the 1975 Trust.

BACKGROUND

*Establishment and Amendment of the 1975 Trust*

James and Dorothy were married and had three children, James Vendley, Jr., Scott Vendley, and Mary Jane Graham. James, Jr., died on March 21, 2003, survived by his two children, defendant and Mark Vendley. Mary died on February 19, 2015, survived by her two children, plaintiffs.

As originally established, the 1975 Trust provided that, upon the death of the first spouse, the trust would be divided into two separate trusts, Trust A and Trust B. Trust A was to consist of the surviving spouse's separate property and the surviving spouse's share in the community property. Trust B was to consist of the deceased spouse's separate property and the deceased spouse's share in the community property.

On January 22, 1982, James and Dorothy executed a fourth amendment to the 1975 Trust. Under the fourth amendment, upon the death of the first spouse, the trust now would be divided into *three* separate trusts. Trust A was to consist of the surviving spouse's separate property and the surviving spouse's share in the community property. Trust B was to consist of the deceased spouse's separate property and the deceased spouse's share in the community property up to the maximum exemption allowable for federal estate tax purposes. And Trust C was to consist of the balance of the deceased spouse's share in the trust estate. Upon the death of the surviving spouse, the trustee " 'shall hold, administer and distribute Trust B, Trust C and any portion of Trust A not disposed of . . . to the issue of the marriage of the Settlors living on the date of the death of the survivor of the Settlors, by right of representation.' " Thus, Trust C was to be distributed in equal shares to the settlors' three children, or their issue by right of representation.

On August 1, 1990, by quitclaim deed, James and Dorothy transferred into the 1975 Trust the Tyler Foote property consisting of three parcels in Nevada City, legally described as:  "Northwest 1/4 of Northeast 1/4 of Section 32 and West 1/2 of Northwest 1/4 of Section 33, Township 18, North Range 9 East, being 117 acres more or less."

James died on December 26, 1993.  As a result, the three subtrusts became operative.  Dorothy became the successor trustee.  Her interests in the trust estate were allocated to Trust A, which remained revocable during her lifetime.  Under paragraph 8 of the 1975 Trust, Trust C became irrevocable upon its creation.

On November 17, 1998, Dorothy, as trustee, executed a quitclaim deed, conveying the Tyler Foote property into Trust C.

On June 23, 2004, Dorothy executed a sixth amendment to the 1975 Trust.  The sixth amendment expressly disinherited defendant and Mark Vendley, the children of James Vendley, Jr., from Trust A.  In a letter dated June 24, 2004, attorney Irving Joseph notified Dorothy that he was enclosing four deeds necessary "to cause the proper funding for the various trusts."  He stated:  "We have transferred the Mine property to Trust C, the Tyler Foote . . . property to Trust A, the 1300 C Street property to Trust B and the 1310 C Street property to Trust C."

On July 16, 2004, Dorothy executed four quitclaim deeds.  She executed a quitclaim deed purporting to transfer the Tyler Foote property from Trust C to Trust A.  Although the Tyler Foote property is located in Nevada County, the deed was erroneously recorded in Sacramento County.  Dorothy executed a quitclaim deed transferring "twenty (20) percent interest in" certain Mine property from Trust A to Trust C.  She executed a quitclaim deed transferring property at 1300 C Street in Sacramento from Trust C to Trust B.  Lastly, she executed a quitclaim deed transferring property at 1310 C Street in Sacramento from Trust B to Trust C.  The four quitclaim deeds did not declare a value for any of the properties.

Dorothy died in 2018.

4

*Plaintiffs' Petition*

On December 4, 2020, plaintiffs filed a petition pursuant to Probate Code section 850 seeking an order determining title to the Tyler Foote property. Plaintiffs alleged that, due to the improper recording of the 2004 quitclaim deed in Sacramento County, Deryk Walcott, the successor trustee, had "declined to effectuate the transfer of title into Trust A as a result of a potential conflict between the beneficiaries of Trust A, and Trust C . . . ." Plaintiffs sought an order stating that the Tyler Foote property was an asset of Trust A.

*Defendant's Cross-petition*

On April 13, 2021, defendant filed a cross-petition seeking to invalidate the 2004 Tyler Foote property quitclaim deed and to confirm that the property was a property of Trust C. Defendant alleged that, when Dorothy executed the 2004 quitclaim deed, purporting to convey the Tyler Foote property from Trust C, an irrevocable trust, to Trust A, she acted contrary to her authority under the 1975 Trust and in violation of her fiduciary duty and her obligations under the Probate Code. Defendant further asserted that the transfer of the Tyler Foote property from Trust C to Trust A would reduce the value of assets passing to Trust C beneficiaries in violation of the terms of the 1975 Trust.

*Defendant's Motion for Summary Judgment*

Defendant moved for summary judgment, arguing that the pleadings and documents demonstrated that the Tyler Foote property was a Trust C asset. She further argued that the undisputed material facts showed that Trust C became irrevocable at the time of James's death. Therefore, Dorothy had no authority to transfer the Tyler Foote property out of Trust C. Defendant argued that Dorothy's attempt to do so breached her fiduciary duty because the express terms of the 1975 Trust prohibited a trustee from changing or altering between beneficiaries the total value of the beneficiaries' trust estates.

5

*Plaintiffs' Motion for Summary Judgment or Summary Adjudication*

Plaintiffs also moved for summary judgment or summary adjudication. They argued that paragraph 5.B. of the 1975 Trust authorized Dorothy as successor trustee to allocate trust assets, provided that her allocation did not alter the total value of Trust C. Plaintiffs further argued there was no evidence that the reallocation of trust assets reduced the value of Trust C.

*Tentative Ruling*

In a tentative ruling, the trial court concluded that defendant was entitled to judgment confirming that the Tyler Foote property was an asset of Trust C. It rejected plaintiffs' contention that defendant's claims were time-barred. The trial court then determined that defendant had established that Trust C was irrevocable at the time Dorothy purported to convey the Tyler Foote property from Trust C to Trust A. It further found that the 1998 transfer of the Tyler Foote property into Trust C was irrevocable, given the language of paragraph 8 of the 1975 Trust. The trial court also found that the purported transfer of the Tyler Foote property from Trust C to Trust A "violated the terms of the trust providing for equal shares to the three children or the issue of the three children . . . ." Rejecting plaintiffs' argument that paragraph 5, which gave the trustee discretion to reallocate trust assets between the subtrusts (including irrevocable subtrusts), provided that they do not change the total value of each beneficiary's trust estate, the trial court concluded: "First, such a reading would render the irrevocability language in Paragraph 8 to be meaningless. Second, the attempted transfer of the Tyler Foote Road from the irrevocable trust to the survivor's trust undeniably altered [defendant's] total value in the trust estate." The court continued: "even if the attempted transfer did not alter any party's 'total value' in the trust estate, the transfer was not authorized since Dorothy expressly lost any ability to transfer the property out of Trust C back in 1998. The attempted transfer in 2004 violated Paragraph 8 of the [1975] Trust even if there was no alteration in the total value of 'such beneficiary's Trust Estate.' "

6

*The Order Appealed From*

Following additional briefing and a hearing, in an order filed January 31, 2024, the trial court denied plaintiffs' motion for summary judgment, granted defendant's motion for summary judgment, granted defendant's cross-petition for an order confirming that the Tyler Foote property was an asset of Trust C and cancelling the 2004 quitclaim deed, ordered judgment entered in favor of defendant, and ordered the trustee to take all necessary actions to confirm the Tyler Foote property was an asset of Trust C.

The trial court determined that defendant's claims were not time-barred, although on different grounds than those in its tentative ruling. The court agreed with defendant that section 366.2 did not apply to her cross-petition, concluding that "both of the pending petitions concern the affairs of the trust as provided at Probate Code section 17200 and not 'on a liability of a person' pursuant to . . . Section 366.2."

The trial court concluded: "According to Probate Code section 15400, Dorothy's earlier 1998 transfer was irrevocable given the clear and unambiguous language of paragraph 8 of the [1975] Trust. As previously noted, there is no dispute that any transfer by the surviving spouse into Trust C made that transfer irrevocable. Once a valid transfer of property is made into an irrevocable trust, the surviving spouse no longer has the ability to dispose of property placed into the irrevocable trust. (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 170 [(*Dudek*).]) When a trust becomes irrevocable, the surviving settlor no longer has the power to change a distribution out of an irrevocable trust. [Citation.]" The court also found that the purported transfer of the Tyler Foote property from Trust C to Trust A violated the terms of the 1975 Trust providing for equal shares among the three children or their issue.

## DISCUSSION

## I

### *Summary Judgment*

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Grayot v. Bank of Stockton* (2023) 98 Cal.App.5th 8, 13; see § 437c, subd. (c).) " '[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] Once the moving party meets its initial burden, the burden shifts to the opposing party to demonstrate the existence of a triable issue of material fact. [Citation.] We review the evidence and the reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." (*Grayot*, at p. 13.)

## II

### *Statute of Limitations*

#### A.     *The Parties' Contentions*

Plaintiffs argue that the one-year limitations period in section 366.2 applied to defendant's cross-petition, and, because her cross-petition was filed almost three years after Dorothy's death, her claims are time-barred. Plaintiffs contend that the trial court erred in ruling that defendant's cross-petition pertained to " 'affairs of the trust' " (Prob. Code, § 17200) rather than being an action brought " 'on a liability of a person' " (§ 366.2). Plaintiffs maintain that section 366.2 applies to liability against a person both in the person's individual capacity and in the person's capacity as trustee.

Defendant counters that her cross-petition was brought pursuant to Probate Code sections 850 and 17200 and concerned the internal affairs of a trust. Section 366.2 does not apply because defendant's cross-petition was not based on the personal liability of a trustee and did not concern a cause of action " 'on a liability of a person.' " According to defendant, the three-year period in Probate Code section 16460 controlled.

8

We conclude that defendant's cross-petition concerned the internal affairs of a trust, and that section 366.2 and its one-year limitations period did not apply.

B.     *Statutory Construction*

For purposes of determining the applicable limitations period, " '[t]he relevant facts are undisputed.  The key issue is the interpretation and application of' " the statutory provisions on which the parties rely.  (*Smith v. Myers* (2024) 103 Cal.App.5th 586, 592.)  " ' "Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo." ' " (*Ibid*.)  " ' " ' "We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent." [Citations.]  The plain meaning controls if there is no ambiguity in the statutory language.  [Citation.]  If, however, "the statutory language may reasonably be given more than one interpretation, ' " 'courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute.' " ' " ' " ' " (*Ibid*.)

C.     *The Limitations Periods on which the Parties Rely*

Section 366.2, subdivision (a), upon which plaintiffs rely, provides:  "If a person against whom an action may be brought *on a liability of the person*, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply."  (§ 366.2, subd. (a), italics added.)

" '[O]n its face, section 366.2 applies to claims that could have been brought against the decedent had he or she lived.' "  (*Yeh v. Tai* (2017) 18 Cal.App.5th 953, 963.) That section "concern[s] *personal liability* of a deceased person."  (*Ibid*., italics added.)

9

"Liability of the person, or 'personal liability' means '[l]iability for which one is *personally accountable* and for which a wronged party can seek satisfaction *out of the wrongdoer's personal assets*.' " (*Estate of Yool* (2007) 151 Cal.App.4th 867, 875, italics added.) "The December 1989 California Law Revision Commission recommendation on the proposed legislation amending Code of Civil Procedure former section 353 [now section 366.2] explained that 'the one year statute of limitations is intended to apply *in any action on a debt of the decedent* . . . .' " (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 308.)

Defendant relies on Probate Code section 17200, which provides, as relevant here, that "a trustee or beneficiary of a trust may petition the court under this chapter *concerning the internal affairs of the trust* or to determine the existence of the trust." (Prob. Code, § 17200, subd. (a), italics added.) Probate Code section 16460 provides that, unless a claim is otherwise barred: "(1) If a beneficiary has received an interim or final account in writing, or other written report, that adequately discloses the existence of a claim against the trustee for breach of trust, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after receipt of the account or report. An account or report adequately discloses existence of a claim if it provides sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into the existence of the claim. [¶] (2) If an interim or final account in writing or other written report does not adequately disclose the existence of a claim against the trustee for breach of trust or if a beneficiary does not receive any written account or report, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim." (Prob. Code, § 16460, subd. (a).)

D.      *Analysis*

The applicable statute of limitations is to be determined by the underlying right asserted. (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.) "The determination of

10

whether a particular statute of limitations applies to a cause of action is a question of law that we review de novo." (*Wang v. Nesse* (2022) 81 Cal.App.5th 428, 438.)

Defendant's cross-petition sought to determine title to a trust asset and to invalidate a deed. Defendant sought "to confirm" that the Tyler Foote property was an asset of Trust C. The cross-petition alleged that Dorothy, "contrary to her authority under the [1975] Trust and in violation of her fiduciary duties executed a Quitclaim Deed, attempting to transfer the Tyler Foote Properties from Subtrust C, to Subtrust A . . . ." The cross-petition further alleged that, contrary to the terms of the 1975 Trust, this transfer would reduce the value of the assets passing to Trust C beneficiaries. The cross-petition alleged that Dorothy's purported conveyance of the Tyler Foote property from Trust C to Trust A was "made without authorization and [was] contrary to restrictions on Dorothy's powers as trustee under the Trust." The cross-petition further alleged that, in making this unauthorized transfer, Dorothy, as trustee, violated her fiduciary duty and violated her obligations under the Probate Code (1) to administer the 1975 Trust in accordance with its terms (Prob. Code, § 16000), (2) to administer the 1975 Trust solely in the interests of the beneficiaries (Prob. Code, § 16002), (3) to deal impartially with the beneficiaries (Prob. Code, § 16003), (4) to avoid conflicts of interest (Prob. Code, § 16004), and (5) to exercise discretionary powers reasonably (Prob. Code, § 16080).

Defendant's cross-petition does not seek to recover for the *personal liability* of Dorothy. (See *Yeh v. Tai*, *supra*, 18 Cal.App.5th at p. 963.) Nor does it seek to recover a *debt* owed by Dorothy (see *Collection Bureau of San Jose v. Rumsey, supra*, 24 Cal.4th at p. 308), individually or in her capacity as trustee. As defendant argues, nowhere in her cross-petition did she raise any issue or allegation that Dorothy was personally liable for her actions, or that sought recompense from Dorothy's personal assets. The cross-petition seeks to undo, set aside, or invalidate an act performed by the trustee.

We disagree with plaintiffs that the cross-petition "is predicated on Dorothy's *liability* as trustee of the Trust, arising from her purported 'violation of her fiduciary duty'

11

in transferring the Tyler Foote Property to Trust A." (Italics added.) Plaintiffs seize on the cross-petition's language concerning Dorothy's alleged breach of her fiduciary duty and her obligations under the Probate Code to suggest that defendant seeks to recover from Dorothy or her estate in tort. But the cross-petition seeks to address the internal affairs of the 1975 Trust (Prob. Code, § 17200, subd. (a)), specifically whether the transfer of title to the Tyler Foote property from Trust C to Trust A was valid. This is a claim "concerning the internal affairs of the trust" (Prob. Code, § 17200, subd. (a)), not a claim "brought on a liability of the person" (§ 366.2, subd. (a)).

Plaintiffs argue that " '[t]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations . . . .' " (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 23.) While this may be true, it does not help plaintiffs. While defendant in her cross-petition does recite that Dorothy, as trustee, breached her fiduciary duty, the nature of the right sued upon in the cross-petition—the gravamen of the pleading—is a challenge to the former trustee's conveyance of the Tyler Foote property from irrevocable Trust C to Trust A, allegedly in violation of the terms of the 1975 Trust. It is not a harm to be redressed by Dorothy personally for injury resulting from a tortious breach of fiduciary duty. Plaintiffs' framing of the cross-petition and contentions to the contrary are unavailing.

Plaintiffs also argue that Probate Code section 16460 and its three-year limitations period did not apply because defendant's cross-petition is not based on the receipt of an interim or final account or other written report. However, this argument ignores subdivision (a)(2) of Probate Code section 16460, which provides: "If an interim or final account in writing or other written report does not adequately disclose the existence of a claim against the trustee for breach of trust *or if a beneficiary does not receive any written account or report*, the claim is barred as to that beneficiary unless a proceeding to assert the claim is commenced within three years after the beneficiary discovered, or reasonably should have discovered, the subject of the claim." (Prob. Code, § 16460,

12

subd. (a)(2), italics added.)  The case law on which plaintiffs rely for the premise that this section is not triggered in the absence of an interim or final account or other written report (*Di Grazia v. Anderlini* (1994) 22 Cal.App.4th 1337, 1347-1348) predated the amendment of Probate Code section 16460, effective January 1, 1997 (Stats. 1996, ch. 862, § 40), to add the italicized language (see *Noggle v. Bank of America* (1999) 70 Cal.App.4th 853, 858-860 [discussing this amendment to Prob. Code, § 16460 and the intent behind that amendment to reject the *Di Grazia* holding]).

In their reply brief, plaintiffs argue that, even if the three-year limitations period in Probate Code section 16460 applies, defendant has not pled nor proved that the cross-petition was timely.  We find this argument forfeited.  While plaintiffs argued in their opening brief that Probate Code section 16460 *did not apply*, they did not argue that, if it *did* apply, the cross-petition was *not timely under that section*.  The general " 'rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764; accord, *Simpson v. The Kroger Corp.* (2013) 219 Cal.App.4th 1352, 1370; see also *Rubinstein v. Fakheri* (2020) 49 Cal.App.5th 797, 809 [defendant forfeited statute of limitations argument by failing to raise it in his opening brief and failing to offer a good explanation for his failure to raise it earlier]).  Plaintiffs have forfeited this issue raised for the first time in their reply brief.

The trial court properly concluded that the cross-petition was not time-barred.

III

*Conveyance of the Tyler Foote Property*

A.     *The Parties' Contentions*

Plaintiffs argue that the conveyance of the Tyler Foote property was proper and did not breach any fiduciary duty.  According to plaintiffs, under the Probate Code and the terms of the 1975 Trust, as amended, Dorothy, as trustee, was authorized to exchange assets between subtrusts, as long as she did not alter the total value of a beneficiary's trust

estate.  Plaintiffs maintain that paragraph 8 of the 1975 Trust also did not bar Dorothy's exchange of assets between the subtrusts.  Finally, plaintiffs argue that defendant submitted no evidence to establish that the exchange of properties between the subtrusts reduced the value of Trust C.

Defendant responds that the trial court correctly concluded that Dorothy lacked the authority to transfer the Tyler Foote property from Trust C to Trust A because Trust C was an irrevocable trust and because paragraph 5.B. of the 1975 Trust prohibited Dorothy from altering the total value of a beneficiary's trust estate.

We conclude defendant did not establish, as a matter of law, that the irrevocable character of Trust C barred the conveyance of the Tyler Foote property from Trust C to Trust A as part of a transfer of assets between the subtrusts.  We further conclude that defendant failed to eliminate all triable issues of material fact as to whether the conveyance resulted in a change or alteration in the value of her trust estate.

B.     *Interpretation of Trust Instruments*

" 'In construing trust instruments, . . . the duty of the court is to first ascertain and then, if possible, give effect to the intent of the maker.' [Citation.]  '[I]f the court can ascertain the testator's intent from the words actually used in the instrument, the inquiry ends. [Citation.]  " 'Where the terms of [the instrument] are free from ambiguity, the language used must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained thereby.' " ' [Citation.]  The proper interpretation of a trust instrument is a question of law subject to independent review, ' "unless interpretation turns on the credibility of extrinsic evidence or a conflict therein." ' " (*Zahnleuter v. Mueller* (2023) 88 Cal.App.5th 1294, 1305.)

C.     *Relevant Provisions of the 1975 Trust*

Paragraph 5.B. of the 1975 Trust, pertaining to powers of the trustee, provided: "Upon any division of the Trust Estate into separate shares or trusts and upon any distribution, the Trustee may apportion and allocate the assets of the Trust Estate in cash

14

or in kind, or partly in cash and partly in kind, or in undivided interests, in such manner as the Trustee in the Trustee's discretion deems advisable.  The Trustee may sell such property as the Trustee deems necessary to make such division or distribution.  After any division of the Trust Estate, the Trustee may make joint investments with funds from some or all of the several shares or trusts.  Provided, however, that nothing herein contained shall give the Trustee any authority to change or alter as between beneficiaries the total value of such beneficiary's Trust Estate."

Paragraph 7.C. of the 1975 Trust gave the trustee the authority to, among other things, "manage, control, sell, convey, exchange, partition, divide, [and] subdivide" trust property.  Paragraph 7.D. authorized the trustee to "invest and reinvest the principal, and income if the Trustee is required to accumulate it, and to purchase or acquire by exchange or otherwise therewith every kind of property, real, personal or mixed, and every kind of investment . . . ."

Under paragraph 8 of the 1975 Trust, during the lifetime of both settlors, the trust could be revoked in whole or in part by either settlor, and could be amended with the written agreement of both spouses.  However, "after the death of the predeceased spouse, the surviving spouse shall have the power to alter or amend or revoke Trust A, but there-after Trust B may not be altered, amended or revoked by any person.  From and after the death of the surviving spouse, Trust A may not be altered, amended or revoked by any person."

D.    *Undisputed Facts and Defendant's Summary Judgment Motion*

The following facts are undisputed:  James's death in 1993 resulted in the creation of subtrusts A, B, and C.  Trust C was an irrevocable trust upon its inception.  Dorothy, as trustee, conveyed the Tyler Foote property into Trust C by quitclaim deed in 1998.  In 2004, Dorothy executed four quitclaim deeds purporting to reconvey properties among the subtrusts.  The quitclaim deeds purported to convey:  the Tyler Foote property from Trust C to Trust A; the Mine property from Trust A to Trust C; 1300 C Street in

15

Sacramento from Trust C to Trust B; and 1310 C Street in Sacramento from Trust B to Trust C.

In her motion for summary judgment, defendant argued that the Tyler Foote property was a Trust C asset; that Trust C became irrevocable at the time of James's death; that, as a result, Dorothy had no authority to transfer the Tyler Foote property out of Trust C; and that Dorothy's attempt to do so breached her fiduciary duty because the express terms of the 1975 Trust prohibited a trustee from changing or altering between beneficiaries the total value of the beneficiaries' estates.

To determine defendant's entitlement to summary judgment, we first address whether the character of Trust C as an irrevocable trust prevented Dorothy from conveying the Tyler Foote property out of it.

E.      *Irrevocable Nature of Trust C*

"An irrevocable trust is one that may not or may no longer be amended or revoked." (13 Witkin, Summary of Cal. Law (11th ed. 2025) Trusts, § 2(4).) "Irrevocable trusts are binding, even on their trustors." (*Aguilar v. Aguilar* (2008) 168 Cal.App.4th 35, 37 (*Aguilar*).) By making a trust irrevocable following the death of one of the settlors, the surviving settlor trustee lacks the ability to change the planned distribution thereafter, absent the consent of the beneficiaries of the trust. (*Id*. at p. 40.) Once an irrevocable trust is created and a valid transfer of property is made to the trust, "the settlor *no longer has any right to possess or otherwise dispose of the property placed in an irrevocable trust*, such that that individual has no ability to reverse course or change his or her mind later." (*Dudek, supra*, 34 Cal.App.5th at p. 170, fn. 13.) "With the creation of an irrevocable trust, trust beneficiaries acquire a vested and present beneficial interest in the trust property, and their interests are not subject to divestment as with a revocable trust." (*Empire Properties v. County of Los Angeles* (1996) 44 Cal.App.4th 781, 787.)

Upon its establishment as an irrevocable trust at the time of James's death, Trust C could not be "amended or revoked." (13 Witkin, Summary of Cal. Law (11th ed. 2025) Trusts, § 2(4).) The surviving settlor trustee could not "change th[e] planned distribution" of Trust C, absent the consent of the beneficiaries (*Aguilar*, *supra*, 168 Cal.App.4th at p. 40), and the settlor could not "*otherwise dispose of the property placed in [the] irrevocable trust . . . .*" (*Dudek*, *supra*, 34 Cal.App.5th at p. 170, fn. 13.) Additionally, the beneficiaries acquired a "beneficial interest in the trust property" of which they could not be divested. (*Empire Properties v. County of Los Angeles, supra*, 44 Cal.App.4th at p. 787.) None of the foregoing, however, expressly prohibited the transfer or exchange of properties among the subtrusts at issue here, so long as the exchange did not divest a beneficiary of the beneficiary's "vested and present beneficial interest in the trust property." (*Ibid*.)

Plaintiffs argue that both the express terms of the 1975 Trust and the Probate Code allowed for the exchange of assets between subtrusts, including irrevocable subtrusts, provided that, as stated in paragraph 5.B. of the 1975 Trust, such exchange did not change or alter the total value of a beneficiary's trust estate.

Paragraph 5.B. of the 1975 Trust authorizes the trustee, "[u]pon any division of the Trust Estate into separate shares or trusts and upon any distribution," to "apportion and allocate the assets of the Trust Estate . . . in such manner as the Trustee in the Trustee's discretion deems advisable." That paragraph further provides, however, "that nothing herein contained shall give the Trustee any authority to change or alter as between beneficiaries the total value of such beneficiary's Trust Estate." Paragraph 5.B. on its face does not limit its applicability to the revocable Trust A. Plaintiffs argue that provisions like paragraph 5.B. are commonly known as " 'replacement right' " or " 'swap power' " clauses. Plaintiffs also emphasize paragraph 7.C., which expressly conferred on the trustee the authority, to, among other things, "manage, control, sell, convey, [and]

17

exchange" property. We agree that these provisions of the 1975 Trust support plaintiffs' position.

Plaintiffs also rely on two sections of the Probate Code. Probate Code section 16226 provides: "The trustee has the power to acquire or dispose of property, for cash or on credit, at public or private sale, or by exchange." Probate Code section 16227 provides: "The trustee has the power to manage, control, divide, develop, improve, exchange, partition, change the character of, or abandon trust property or any interest therein." On their faces, these sections do not limit their application to revocable trusts. Moreover, no case authority citing these Probate Code sections has held that they apply only to revocable trusts or do not apply to irrevocable trusts.

The terms of the 1975 Trust and the Probate Code sections on which plaintiffs rely support their position that the exchange of property among subtrusts by the trustee was not prohibited provided, under paragraph 5.B. of the 1975 Trust, that the exchange did not change the value of a beneficiary's trust estate.

The trial court relied on paragraph 8 of the 1975 Trust, which establishes that, after the death of the first spouse, the 1975 Trust split into subtrusts, and the subtrusts holding the deceased spouse's property "may not be altered, amended, or revoked by any person." Contrary to the trial court's finding, we conclude the plaintiffs' position does not render paragraph 8 of the 1975 Trust meaningless. We conclude that paragraphs 5.B. and 8 can be harmonized provided that an irrevocable trust is understood as being one that may not be "amended or revoked" (13 Witkin, Summary of Cal. Law (11th ed. 2025) Trusts, § 2(4)), but may be subject to having property exchanged in and out of the trust if authorized by the terms of the trust and if carried out in strict compliance with the trust terms—under the 1975 Trust, that means not affecting the value of a beneficiary's trust estate.

In support of her motion for summary judgment, defendant has not identified any provision of the Probate Code or the 1975 Trust that prohibits the exchange of properties

18

between an irrevocable subtrust and a revocable subtrust so long as the exchange does not change a beneficiary's share in the trust estate. The case law on which the trial court relied and on which defendant relies on appeal, establishes that "[i]rrevocable trusts are binding, even on their trustors" (*Aguilar*, *supra*, 168 Cal.App.4th at p. 37), that a surviving settlor trustee lacks the ability to change the planned distribution of an irrevocable trust absent the consent of the beneficiaries (*id*. at p. 40), and that, once an irrevocable trust is created and a valid transfer of property is made to the trust, "the settlor *no longer has any right to possess or otherwise dispose of the property placed in an irrevocable trust*, such that that individual has no ability to reverse course or change his or her mind later" (*Dudek*, *supra*, 34 Cal.App.5th at p. 170, fn. 13). However, these cases do not hold that property may not be exchanged between an irrevocable subtrust and a revocable subtrust where, as here, such transfer or exchange is authorized by the express terms of the trust.

We conclude that defendant failed to establish that Dorothy violated her duty to properly administer the 1975 Trust, according to its terms and under the Probate Code, by exchanging properties between the subtrusts.

F.  *Altering the Total Value of a Beneficiary's Trust Estate*

In her summary judgment motion, defendant averred that the conveyance of the Tyler Foote property from Trust C to Trust A worked "a significant change in the value of the beneficiaries' estate as contained in Trust C." On appeal, she argues that the conveyance "undeniably" altered the total value of her share of the trust estate in violation of paragraph 5.B. of the 1975 Trust.

As stated, under paragraph 5.B., Dorothy had discretion as trustee to "apportion and allocate the assets of the Trust Estate" as she deemed advisable. However, that paragraph further provides that any such apportionment or allocation must not change or alter, as between beneficiaries, the total value of a beneficiary's trust estate. Thus, assuming the exchange of properties among subtrusts was not otherwise prohibited,

19

paragraph 5.B. prohibits such exchange if it changes or alters, as between beneficiaries, the total value of a beneficiary's trust estate. If the conveyances did change the value of defendant's trust estate, they violated the express terms of the 1975 Trust.

The record does not contain any valuations of the four properties transferred between subtrusts. Defendant has not offered or identified any evidence to support her claim that the conveyance of the Tyler Foote property from Trust C to Trust A, one of four conveyances executed as part of an exchange of properties among the subtrusts, "undeniably" altered the total value of her share of the trust estate. Thus, in support of her motion for summary judgment, defendant failed to eliminate all triable issues of material fact as to whether the conveyances changed or altered the total value of her trust estate in violation of paragraph 5.B. of the 1975 Trust.

## DISPOSITION

The January 31, 2024, order is reversed, and the matter is remanded to the trial court with directions to vacate so much of that order as granted defendant's motion for summary judgment and enter a new order denying defendant's motion for summary judgment.  Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

\s\
Krause, Acting P. J.

We concur:

\s\
Mesiwala, J.

\s\
Wiseman, J.*

---

\*    Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.